*ALBANY, August, 1833.*

*In the matter of the election of directors of the M. & H. Rail Road Co.*

---

In the matter of the election of Directors of the MOHAWK AND HUDSON RAIL ROAD COMPANY.

An election of directors of an incorporated company will not be set aside on a summary application to the supreme court for that purpose, on the ground that the inspectors were not sworn in the form prescribed by the statute; and it seems that the election would not be set aside upon such application, although no oath whatever was administered to the inspectors, if no objection was interposed at the time of the election—it is enough that they were duly appointed and entered on the discharge of the duties of their office. They are inspectors de facto.

Where on the transfer books of an incorporated company stood the name of Samuel Jaudon, with the addition of cashier thereto subjoined, as the owner of 900 shares; it was held, that such shares could be voted upon only by Jaudon or by his attorney duly authorized by him for that purpose; that a

ALBANY,
August, 1838.

In the matter
of the election
of directors of
the M. & H.
Rail Road Co.

proxy from Joseph Coperthwaite would not confer such authority, although accompanied with proof that he was the successor of Jaudon as cashier of the U. S. Bank, and had authority to act and vote in his place in reference to all stocks standing in his name as cashier : the court holding that though it should be admitted that the word cashier indicated that the stock was held in trust, still none other than the trustee in whose name the stock stands, or a person duly authorized by him, is entitled to vote.  .

It seems that on an application of this kind, proof of authority to execute a proxy, to vote at an election, not exhibited to the inspectors, will not be received by this court to establish the allegation of an erroneous rejection of votes.

Inspectors of an election of directors are not bound to close the polls at the end of an hour, although by the resolution of the board from which they derive their authority, the election is limited to one hour; they may exercise a reasonable discretion in the matter.

· No one but a party, named as aggrieved, in the notice of application to set aside the election, is entitled to be heard; a notice given by one as attorney for A. B. and others, entitles no one but A. B. to be heard.

August, 1838.   APPLICATION to set aside an election of directors. An election was held, pursuant to notice, for the choice of directors of the Mohawk and Hudson Rail Road Company, on the 13th day of June last.   There were opposing tickets, one headed by  G. M. Davison, and the other by S. Glover.   The stock of the company consists of 10,000 shares, each share being entitled to a vote.   Seven thousand votes were given in and received by the inspectors of the election, · and the ticket headed G. M. Davison was declared to be elected by a majority of 566 votes.   Application is now made to set aside the election on three grounds : 1. That the inspectors were not sworn in the form prescribed by statute ; 2. That they improperly rejected a vote on 900 shares, which would have been given for the ticket headed S. Glover, and of course elected that ticket; and 3. That the poll was kept open longer than one hour, the period specified in the resolution of the directors ordering the election.   The notices of the application were given by "Joseph Blunt, attorney for the Bank of the United States," and by "Samuel Glover, president and director of said company, in person and as attorney for Robert Birney and others, stockholders, &c."   Robert Birney was the owner of 50 shares of the stock which was voted upon by proxy, but for which ticket the vote was cast, did not appear.  The inspectors were

sworn *well and faithfully to perform the duties of the office of inspectors*, instead of being sworn in the form prescribed by statute, 1 R. S. 605, § 7, 2d ed. *to execute the duties of inspectors with strict impartiality, and according to the best of their abilities.* Mr. Glover, the president of the company, procured the attendance of the commissioner who administered the oath, and on being inquired of by one of the inspectors as to the form of the oath to be taken, answered that he knew of no particular form. The oath was then administered, and no objection was made by any one during the pendency of the election that the inspectors were not duly sworn. The facts in relation to the rejection of the 900 votes are these : on the *transfer books* of the company stood the name of Samuel Jaudon, with the addition of *cashier* added thereto, as the owner of 900 shares. On these shares Mr. Glover offered to vote for the *ticket headed S. Glover*, and in support of his right to do so produced a proxy dated 9th June last, from " Joseph Cowperthwaite, *cashier of Philadelphia.*" appointing Samuel Glover to be his substitute and proxy, for him and in his name to vote at any election of directors of the Mohawk and Hudson Rail Road Company : which was executed thus—" J. Cowperthwaite (L. S.)" Mr. Glover also produced an affidavit that Joseph Cowperthwaite is the *successor of* Samuel Jaudon as cashier of the United States Bank, and has authority to act and vote in his place, in reference to all stocks standing in his name as cashier. The vote was rejected by the inspectors. *In relation to the keeping open of the poll of election :* On the 25th of May last a resolution was adopted at a meeting of the board of directors, " that in pursuance of the standing " by-laws of this board, the next election for nine directors, " &c. be held at, &c. on the thirteenth day of June next, and " that the poll be opened at noon and continue open for one " hour ; and that Messrs. [naming three individuals,] be in- " spectors of the said election," &c. The election was held on the day appointed, and soon after the hour of one o'clock P. M. the inspectors were informed that the time for closing the poll had arrived, and Mr. Glover objected to any more votes being received. The inspectors not having been able

Vol. XIX. 18

ALBANY,
August, 1838.

In the matter
of the M. & H.
Rail Road Co.

ALBANY,
August, 1838.

In the matter
of the M. & H.
Rail Road Co.

to receive all the votes in readiness, declined to close the polls, and after the objection of Mr. Glover took 732 votes in addition to those before received. The only additional facts transpiring at the election, deemed necessary to be stated, are that a Mr. Lassala voted on 125 shares standing in his name as *trustee*, and Mr. R. White voted on 475 shares standing in his name as *cashier in trust:* these votes were received without any objection, and were given for the ticket headed G. M. Davison.

In addition to the evidence furnished to the inspectors, in reference to the 900 shares of stock standing in the name of Mr. Jaudon on the books of the company, the objectors to the election now produced the affidavit of Mr. Robinson, former cashier of the branch of the United States Bank in the city of New-York, that the customary mode of purchasing stock by monied corporations is to take a transfer in the name of their cashiers, adding to the proper name of the individual the title of his office, viz. *cashier;* and that such was especially the custom of the Bank of the United States, and that that bank transfers stocks and gives proxies for voting at elections in the name of its cashier or successor in office. The affidavit of Mr. Delafield, of the Phœnix Bank, was also produced, in which he stated that he had been agent for many foreign corporations, knew their customs, and that transfers were ordinarily taken in the manner stated by Mr. Robinson. Mr. Rintoul, secretary of the New-York, Providence and Boston Rail Road Company, made a similar affidavit.

The argument on the motion was opened by

*S. Glover,* for the objectors.

*D. Gardiner, jun. & S. Stephens,* contra.

*J. Blunt,* in reply, for the United States Bank.

*M. T. Reynolds,* also in reply, for the other objectors.

*By the Court,* COWEN, J.  The only inquiry of any con- <span>ALBANY,</span> siderable difficulty in this case, respects the length we are <span>August, 1838.</span> warranted to go in ascertaining the title of the *inspectors.* In the matter The charter of incorporation does not expressly provide for of the M. & H. inspectors, but I think we are to take it as *conceded* that Rail Road Co. such officers had been made necessary by a by-law of the company. The directors have power to provide for the appointment of such officers, under the general authority in their charter to prescribe by-laws, rules and regulations touching the election of directors." Statutes of 1826, p. 287, § 6. The resolution of the 28th of May, for the holding of the election in question, professes to proceed upon a standing by-law ; it appoints the three gentlemen named to the office of inspectors, for the special occasion ; and it is no where denied that a by-law requiring the appointment of such officers in fact exists. Besides, all parties proceeded at the election on the assumption that they were proper officers. The applicants do not deny that the inspectors were duly chosen, and appeared at the day of election under a notice from the agents of the company ; but they object that they were not properly sworn into office. Their oath was *well and truly to perform its duties* generally ; not as the statute requires, to execute their duties *with strict impartiality.* 1 R. S. 2d ed., 605, § 7. The omission was not, as Mr. Roosevelt (one of the inspectors) testifies, owing to him. He applied to Mr. Glover, the president of the corporation, for the form of the oath, who replied that he knew of no particular form ; and the inspectors were sworn in by Mr. Bissell, whose attendance was procured by Mr. Glover ; and the form was according to Mr. Glover's direction. This is not denied ; and no one made any objection at the time, that the oath was informal. The election was regularly appointed and advertised, and a number of voters were present when the oath was administered. The inspectors proceeded to receive the votes ; hearing and deciding objections, closing the polls and declaring the result, when this formal difficulty is started. It is heard for the first time, on this motion. Certainly after what has transpired, it does not lie with Mr. Glover to make the objection, nor I think with Mr.

ALBANY,
August, 1838.

In the matter
of the M. & H.
Rail Road Co.

Birney or any one who knowing of the irregularity, voted either in person or by proxy, whatever force there might be in it, independent of assent or waiver. No person or body corporate, besides the bank of the United States, who was not present and had no opportunity to object, is specifically named as complainant in these proceedings. Mr. Glover appears on a notice signed by himself in person, and as attorney for Mr. Birney and *others in favor of the defeated ticket*, without saying who *those others are*. The statute requires us to interfere summarily on the application of *any person or persons, or body corporate that may be aggrieved by, or may complain of any election*, and either set aside or establish the election, or make such order or give such relief in the premises as right and justice may appear to require. 1 R. S. 2d ed., 605, § 5. It seems to me that the person complaining should at least be named; and that then he should farther state some irregularity to which he wanted an opportunity to object. I can hardly agree that with lawful, and for aught that appears, actual notice of an election, parties are entitled to absent themselves and then appeal to this court upon a mere formal defect, which would have been corrected upon suggestion; and the existence of which, therefore, may be fairly set down to their own neglect. That this would be so in respect to the receiving of improper votes, was said by Nelson, chief justice, in the late case of an application to set aside the election of directors for the Long Island Rail Road Company. Ante, p. 37. We are told that irregular acts are not waived by mere silence, and that to make them lawful, all the corporate members must assent. For this, 1 Wilcock on Mun. Corp. 49, was cited, but that relates to *defective notices* of the election, or other *corporate business*.

But even if the objection to the form of the oath had been raised and disregarded, and specific complaint made here, it is very questionable whether we could regard it. Whether their appointment be directed by statute or a by-law, the inspectors are officers of the company, not necessarily to be sworn on the day of election, but like other officers, may take the oath immediately after being chosen. Being regularly appointed and entering upon and performing the du-

ties of their office, they become inspectors *de facto* and for aught I see, their acts are to be judged by the same rules which would be applied to the acts of any other corporate officer. In *Rex* v. *Lisle*, Andr. 163, one Goldwire, who had never been elected took the oath of office, and while he was pursued by *quo warranto*, convened a meeting of the corporation, and though his want of title was objected to by several electors, nominated the defendant a burgess, who swore into office. Goldwire was afterwards actually ousted ; and the court held the defendant's title defective, because Goldwire could not be deemed a mayor *de facto*. But it was admitted that acts for the good of the corporation, whether judicial or ministerial, are valid if done by a mayor *de facto*, though wrongfully in. This was said especially by Lee, chief justice, who added, the question is, whether the person acting be an officer *de facto* as to the particular purpose under consideration, according to 1 Salk. 96. The case in *Andrews*, was on a *quo warranto* drawing in question Lisle's election on the nomination by Goldwire. It was, therefore, a direct proceeding like this ; and yet the court did not pretend they could question the election, if the presiding officer had been such merely *de facto*. The reference to 1 Salk. 96, is to the case of *Parker* v. *Keet*, also reported in several other books, 1 Ld. Raym. 658, Holt, 221, 12 Mod. 467, and in all these Holt chief justice, is reported as having said, that an officer, deputy or agent, though erroneously appointed in form, and with intent that he shall do but a single act, and doing it shall be deemed an officer *de facto*, and his act be binding. The proceeding in question was to take the surrender of a copy hold estate in virtue of an appointment from the steward's general deputy; a thing much in nature of a single act pursuant to a corporate appointment. The act of such a special officer, it was said, is not even voidable. Many other pertinent illustrations are given, in the course of the discussion to which the case cited gave rise.

In the case at bar the inspectors were properly chosen; and let it be granted that, to give them a right, they should also be sworn. The true remedy would be by a direct

ALBANY,
August, 1838.

In the matter
of the M. & H.
Rail Road Co. proceeding against them, as in *The King* v. *Castle*, Andr. 119, 241. The power of such officers cannot be drawn in question collaterally by an appeal from what they themselves have done. In *Hippesley* v. *Tucke*, T. Jones, 81, in 29 Car. 2, on error from the mayor's court, because the mayor had not taken the oaths against popery under the statute, 25 Car. 2, this was allowed, expressly because the statute had declared the office void. *Deverrey* v. *Morris*, T. Jones, 137, S. P. on error from a sheriff's court of the city of Norwich, in 31 and 32 Car. 2; 2 Lev. 243, S. C.; 2 Mod. 193, S. C. Yet even this was much contested by several old cases, and the direct contrary held, notwithstanding the strong words declaring the office void. Such was the first impression in *Hippesley* v. *Tucke*, in the king's bench on its being moved in 27 and 28 Car. 2, 3 Keb. 606. The court mentioned cases in which a corporate office might be void for an undue election; but added, " as to the interests of a stranger, as acts of jurisdiction they are not void; as judgments here in Westminster Hall would not be void by any one or all *not having duly taken the oaths. These matters are collateral.*" And the subject was considered again and again, before the court held the election void. 3 Keb. 665, in 28 Car. 2. Id. 662, in the same year. Id. 721, in the same year. See 2 Lev. 184, S. C. It is said by Serg. Hawkins, in respect to these and the like cases, that " notwithstanding the words of the corporation act are so very strong as to make such election, &c. void, and those of the test act to make such persons disabled in law to all intents and purposes whatsoever, to have, occupy or enjoy the said offices; yet it hath been strongly holden that *the acts of one under such a disability, being instated in such office, and executing the same without any objection to his authority, may be valid as to strangers.* For otherwise not only those who no way infringe this law, but even those whose benefit is intended to be advanced by it, might be sufferers for another's fault, to which they are no way privy; and one chasm in a corporation happening through the default of one head officer, would perpetually vacate the acts of all others, whose

authority in respect of their admission into their offices may depend on his." 1 Curw. Hawk. P. C., b. 1, ch. 26, § 16.

ALBANY,
August, 1838.

In the matter
of the M. & H.
Rail Road Co.

The statute requiring inspectors of corporate elections to takean oath is simply *directory* in its terms, and without any nullifying clause on account of omission ; and the whole case is one which comes emphatically within the reasoning of Hawkins. In respect to third persons who have a concern in the acts of these inspectors, all they do should be holden valid. Several *dicta* of American courts and one in this court were cited on the argument to that effect. In *The People* v. *Runkle*, 9 Johns. R. 147, 159, the question was whether certain trustees of a corporation were elected at the proper time. The court said, " the trustees so elected would at least be trustees by color of office, and their acts would be good," admitting they were not duly elected. In the *Bank of the U. S.* v. *Dandridge*, 12 Wheat. 18, Story J. said, " That some of the provisions of the charter and by-laws may well be deemed directory to the officers, and not conditions, without which their acts would be utterly void, will scarcely be disputed. What are to be deemed such provisions, must depend upon the sound construction of the nature and object of each regulation, and of public convenience and apparent legislative intention. If a regulation be merely directory, then any deviation from it, though it may subject the officers to responsibility, both to the government and to the stockholders, cannot be taken advantage of by third persons." He cites *The Bank of the Northern Liberties* v. *Cresson*, 12 Serg. & Rawle, 306, *United States* v. *Kirkpatrick*, 9 Wheat. 720, and *United States* v. *Van Zandt*, 11 id. 184, which are slightly illustrative of the doctrine advanced. As was said on the argument, you may as well be allowed to question the acts of a justice of the peace or others in station, because they have omitted to take their official oaths, or have made some slip in the form of the oath. Such, we have seen, was the suggestion in 3 Keb. 606. It was said, in reply, that the act of a justice who had not sworn in would be open to review, and an instance was put of the statutes often passed to make his acts valid. Such statutes are well enough to avoid all question, and es-

ALBANY,
August, 1838.

In the matter
of the M. & H.
Rail Road Co.
pecially to protect the magistrate as against the govern-
ment; but it cannot be that all his judgments could be over-
turned on error, much less that the suitors in his court would
be liable in trespass for acts done under his authority, or
officers go unprotected by his process, which stands fair on
its face.

It is the same thing, whether the act in question be *judi-
cial* or *ministerial*. Thus, in *Rex* v. *The Corporation of
Bedford Level*, 6 East, 356, it was not questioned that the
acts of a deputy registrar *de facto*, whose duty related mere-
ly to recording titles to land in a certain place, would be
valid. The only question made, was whether he was an
officer *de facto* of the corporation. Lord Ellenborough, C.
J. there defines such an officer. " It is one," he says, " who
has the reputation of being the officer he assumes to be,
and yet is not a good officer in point of law." Id. 368, 9.
In this country, how many thousands may claim title under
the registry by clerks of counties who have perhaps not
been duly elected, or not regularly sworn; and is it to be
tolerated, that therefore all they have done shall be avoided
by a collateral action, or indeed by any proceeding, except
as between themselves and the government? In *Knight*
v. *Corporation of Wells*, 1 Lutw. 508, a mayor *de facto*
was holden able to bind the corporation, by affixing the
seal to a bond. The court said, " Admitting he was not
qualified to be mayor yet he came in to be mayor by color
of an election, and was mayor *de facto* by means of that
election, and *all ministerial . and judicial acts done by him
are good*. An action will lie against him for a false return
on a writ of mandamus : the corporation might have him
removed and displaced; but that not being done, he had
power to seal the bond." Id. 519 ; and see Angel & Ames
on Corp. 158 to 160, § 4, and cases there cited. The gene-
ral doctrine is also very well considered in *The Vestry of
St. Luke's Church* v. *Matthews*, 4 Des. Eq. R. 578, 587.
Professor Wooddeson says, that if an officer perform a *cor-
porate* or *judicial act*, it is valid, though he is not *de jure*
qualified. 1 Wood. Lect. 491. The same thing was held
by this court as to a corporate act in *Trustees of Vernon*

*Society* v. *Hills,* 6 Cowen, 23, 27. It is said, on the authori- ty of several cases cited in 2 Willcock on Mun. Corp. p. 495, § 472, that the relator may impeach the title of the person who presided at the election of the defendant, though the officer were in, *de facto.* But it is quite doubtful, on other cases, whether such a doctrine can be maintained; and in an *addenda,* the same author states the case of *Rex* v. *Slythe,* H. T. 1827, which held that an admission by an officer *de facto* could not be impeached by a *quo warranto,* it being a merely ministerial act. The duties of the inspec- tors are an admixture of *ministerial* and *judicial.* The statute confining them to the transfer books as the test of the stockholder's right to vote, leaves them much less dis- cretion than they would otherwise possess. But they are, notwithstanding, as in the case at bar, often called on to decide important legal questions. They determine judicially that the votes are receivable or not, and as ministerial officers, they receive or reject. Titles to office arise as a consequence to persons, who are in no way responsible for the manner in which the inspectors were chosen or sworn into office. If, in trying the title of persons thus elected, we are put also to look to the right of the officers who pre- sided and directed, it appears to me that we may with equal propriety be called on to go a step farther—to the title of the presiding officers at their election, and so to the authority by which the latter may hold. In this way, a proceeding, which certainly is but in the nature of a *quo warranto,* will never cease its issues until all the machinery, no matter how remote, shall be found to have been legally constituted. Going so far, would not only be wrong, but utterly impracticable. The general rule is, obviously, that corporate business done by officers *de facto* shall, on its validity coming in question, be sustained; and there is certainly nothing in the matter now before us to make it an exception.

Then was the vote of Mr. Cowperthwaite properly reject- ed? Of this there can be no doubt since the statute, re- quiring that stock shall be voted upon in the name standing on the transfer books, either in person or by proxy. The

ALBANY,<br>August, 1838.

In the matter<br>of the M. &amp; H.<br>Rail Road Co.

ALBANY,
August, 1838.

In the matter
of the M. & H.
Rail Road Co.

name in this case was that of Mr. Jaudon. That he is called *cashier*, can make no difference. It showed no trust in him, or if a general trust, none for any certain person. The Bank of the United States was not named; and, clearly, if the trust do not appear distinctly, it cannot be recognized. The trust is a matter between Mr. Jaudon and the bank, with which this corporation have nothing to do. *The Long Island R. R. Co.* before cited. 1 R. S. 605, 2d ed. § 6. *Ex parte Willcocks*, 7 Cowen, 402. The addition of the word *cashier* is a mere description of the person. The vote by proxy was offered in behalf of Mr. Jaudon, with or without his addition upon the transfer books. The statute is also a conclusive answer to the attempt made to vote in the name of Mr. Cowperthwaite. It is claimed that as Mr. Jaudon held in trust for the bank, his resignation as cashier and the election of Mr. Cowperthwaite as his successor, worked a transfer of the trust to the latter. To this there are several answers, admitting that the title of the bank appeared upon the transfer books. First, the resignation and election would not work a transfer. It is not pretended that this would be the effect within any known rule of law. According to that, the transfer must be made by an actual assignment in the usual form under the hand of Mr. Jaudon. But it is now said that such an effect is wrought by the custom of monied institutions holding stock. Nothing of that kind was shown to the inspectors, and we therefore cannot notice it; for we sit as a court of appeal, at least in this respect, and must confine ourselves to the matters presented to the court below. But if this were otherwise, the proof utterly fails to establish the custom contended for. Again: the power of attorney to Mr. Glover authorizing him to vote, does not purport to be a power from the cashier of the bank of the United States. It is from Joseph Cowperthwaite, cashier, of Philadelphia. Mr. Glover contended that under the circumstances, the power offered was the proper proxy of the United States Bank. So far from this, the bank is not even alluded to in the instrument. To give it that effect, the bank should have been named as principal, and the proxy sealed with its corporate seal. But it had

ALBANY, .
August, 1838

In the matte
of the M. & H
Rail Road Co.

no power to delegate any right to vote on the 900 shares, because they did not stand in its name on the transfer books. Every thing was doubtless very well in respect to this stock, as between the bank and Mr. Jaudon; but in determining the right to vote, the law looks to the transfer books alone, and takes the name in which the legal title resides. This court decided in the matter of Barker, that stock standing in his name, expressly in trust for other designated persons, must yet be voted on by the trustee. 6 Wendell, 509.

The votes of Mr. Lassala and Mr. White were properly received for three reasons; they were neither objected to, nor did the name of their *cestuis que trust* appear on the transfer book; and if they had, we have seen it would not vary the case.

The trustees acted properly in taking the requisite time, notwithstanding they were called on to close the poll at one o'clock. I much doubt whether the time could in virtue of a by law be tied up to a certain hour of the day; but in this case it was not attempted. I have no doubt, that in case of actual necessity, the business might have been extended even to the next day. Every principle of construction is in favor of full time, otherwise business may be badly done by being hurried, or embarrassed and defeated by the raising of dilatory objections and protracted examination and discussion. *Rex* v. *The Mayor, &c. of Carmarthen,* 1 Maule & Sel. 697.

The motion to set aside the election is denied.