## Dishon v. Smith, County Judge.

1. Mandamus: injunction. An injunction restraining a county judge from removing the offices and records of the county from one town to another, is not in conflict with the mandate of writ of *mandamus*, requiring him and the other members of the board of canvassers to canvass the returns of an election on a proposition to remove the county seat to the same town, and to recount certain returns which will determine the result in favor of such removal.

2. Same. In such cases the office of the *mandamus* is to compel ministerial officers to discharge their duty by a canvass of the returns, while that of the injunction suit is to determine the validity of such returns.

3. Approval of laws. Printed copies of the approval by the Governor of the several laws published in a volume issued by the authority of the State, are not essential in order that the laws may take effect.

4. Notices of election. The provisions of chapter 46, laws of 1855, "An act in relation to county seats," prescribing the time and manner of giving notices of the presentation of a petition for the holding of an election on the removal of the county seat, are directory merely, and the absence of such notice will not invalidate an election of which the people were duly notified.

5. Same. An election will not be invalidated by the omission of some duty by an officer charged with giving notice thereof, when such election has been duly ordered and held.

6. Returns. In determining the validity of election returns, the recitals of the returns and of the certificates of the judges and clerks appended thereto will be considered together.

7. Adjudication. A board of canvassers cannot adjudicate upon the sufficiency of election returns, but a court of justice may and will go behind the returns, and determine the regularity of the election, and of the manner in which it was conducted.

8. Bribery. The giving of facilities for the public convenience of the whole county, as an inducement to remove a county seat, or the offering of a public advantage to an entire community, as an inducement to the members of such community to vote for such removal, does not constitute bribery within the meaning of sections 2647–2657, Code of 1851.

*Appeal from Marshall District Court.*

Thursday, December 22.

This was a petition for an injunction to restrain the county

judge of Marshall county, in reference to certain proceedings, subsequent to a vote upon a proposition to remove the county seat.

The case is connected with that of *The State ex rel. Rice against the same defendant,* 9 Iowa 334, and is based upon the same facts; and much repetition may be avoided by a reference to that case for the history of the matter.

The petition refers to the election held in April, 1858, upon the question before named, and avers that the election was unauthorized, and was void upon other grounds. After stating some grounds for the charge that the election was void, which are set out in the opinion of the court, the complainants charge that the citizens of the town of Marshall, to which it was proposed to remove the county seat from Marietta, procured votes to be cast in favor of Marshall, by bribery, and by purchase and sale, and that the number of votes thus procured to be cast was more than sufficient to change the result.

The first specification under the charge of bribery, is that the citizens of the town of Marshall subscribed, agreed and bound themselves to pay the citizens of Marion township in said county, the sum of five hundred dollars, to be applied in building bridges across the Iowa river, between the town of Marshall and the township of Marion, aforesaid; which was upon the express condition that the citizens of Marion township would vote for the relocation of the county seat at Marshall. And the petition charges that twenty five votes were obtained in said Marion township for the location of the county seat at Marshall, by reason of such agreement and obligation, which would otherwise have been cast for Marietta.

The second specification is the following: That the citizens of the town of Marshall, with the intent improperly and illegally, to induce the citizens of the county to vote for the relocation of the county seat at Marshall, did make a con-

veyance of certain real estate and appurtenances in the town of Marshall, to the citizens of said county, upon the condition expressed in said conveyance, that the people of said county would vote for the relocation of the county seat at Marshall. And the complainant avers that by reason of said conveyance a large number of votes, to-wit, fifty-six votes were obtained for Marshall which would otherwise have been cast for Marietta.

The third specification is as follows: That one Wells S. Rice, a citizen of Marshall and a prominent actor in the said question of relocation, with the corrupt intent thereby to improperly and fraudulently procure votes for Marshall, gave his promissory note to the Marshall County High School Company, for the sum of three thousand dollars, which note was indorsed by G. M. Woodbury and others, citizens of the town of Marshall, and was so signed and indorsed upon the condition and corrupt agreement, that in consideration thereof the citizens of Iowa township would vote for Marshall as the county seat. And it is charged that, by reason of this bribe, votes to the number of seventy were procured to be cast for Marshall by the voters of said Iowa township, which but for said bribe, would have been cast for Marietta. And it is further alleged that one Sylvanus Rice, also a citizen of Marshall, gave his note to the same parties for one thousand dollars, with the same corrupt intent, agreement and result.

By an amendment to the petition, the complainants represent that after the election, the canvassers canvassed the returns, and declared that Marietta had received a majority of the votes, and thereupon one Wells S. Rice sued out from the District Court a writ of *mandamus* requiring the county judge to recanvass the said votes, and to count certain votes which were before rejected by the canvassers on account of certain informalities in the returns thereof, or show cause why he should not so do; and that such proceedings were had therein, that the District Court awarded a peremptory writ commanding the same, from which order the said county judge appealed to the Supreme

Court, and such proceedings were had thereon, that at
the December term, 1858, the last named court affirmed
the decision of the District Court awarding the peremp-
tory writ. That such peremptory writ was issued and
served on the said defendant, he confessing service thereof
by writing, and in obedience to the mandate thereof, he
did (with two justices of the peace) proceed to canvass
the said returns, and did duly and legally canvass them,
and did declare as the result thereof that Marietta had
received a majority of the votes, and he made a legal
entry thereof and declared Marietta the county seat of said
county.

In the original petition the complainants' prayed an in-
junction, restraining said Smith and his successors in office,
from proceeding further in the canvass of said votes, than
simply to examine the returns and make abstracts, stating
the number of votes cast for each of the said towns, and
such other acts as by law they are required to perform; that
he be specifically enjoined from declaring Marshall to be the
county seat, and he and all others under his authority from
removing the records, documents or offices of the county,
thereto, until the further order of the court. And they pray
that the court adjudge the said pretended election to be null
and void; that the returns from the townships of Le Grand,
Marion and Greencastle, may be declared insufficient and
void, and for such other orders and relief, &c.

An injunction was allowed in vacation, and at the April
term A. D. 1859, the respondents filed a motion to dissolve
it, which was granted, and the complainants appeal. For
the purposes of the hearing in this court the motion is to be
regarded as a demurrer.

All other points which are essential are noticed in the
opinion of the court.

*E. W. Eastman, M. M. Crocker* and *C. C. Cole* for the
appellant.

*H. C. Henderson* and *W. Penn Clarke* for the appellee.

No briefs on file.

WOODWARD, J.—In the outset we are met by that cause assigned, which objects that the injunction commands the county judge not to do that which by the writ of *mandamus* he is commanded to do. At the first sight this appears plausible, but on a close view it is ascertained not to be sound. The two commands do not conflict. The *mandamus* only orders the doing of a certain act and does not follow into its consequences. The injunction seeks to stay those consequences. The *mandamus* directs the county judge to canvass the votes, counting in certain returns, and to ascertain the result, but it does not order him to remove the public offices ; whilst the injunction directs him not to remove these. We need not determine how far, to what act, the true mandate of the writ would go. It would not, in the first instance, command him to carry out to the full extent the consequence of the election, that is, to remove the county seat ; but at whatever point the *mandamus* would cease to direct, at that point the injunction would commence its inhibition.

This reasoning is of necessity. Hitherto the two points held have been, that the canvassers could not judge of the sufficiency of the returns, and that they must count them. In this position of things, Marshall appears to be the county seat. Now suppose the returns from three townships to be insufficient, and this changes the result. Then there must be some point at which the injunction may apply itself to prevent that result, the true vote does not call for, that is, a removal to Marshall. The sufficiency of the returns from the three townships has not yet been tried. As this sufficiency is contested, until this trial takes place, it is not known whether the legal returns show Marshall or Marietta to be the county seat. This is the object of the present suit, and the injunction is to stay the proceeding just where the *mandamus* leaves it, until the above question is tried. Such is the true intent of the *mandamus* and the injunction,

to whatever extent their particular language may go. But they do not conflict in the present case. It will be observed that the prayer is that the county judge be restrained from proceeding further in the canvass, than simply to examine the returns and make abstracts stating the number cast for each town, and such other acts as they may by law be required to perform. If the writ should go so far as to direct the judge to declare the result, still the removal is the chief object and this is restrained.

Neither does the injunction restrain the county judge from the performance of a legal duty. If the returns are invalid as is alleged, and thus the result is changed, it is not his duty to remove ; and it is in order that that question may be tried, that the injunction was allowed.

The question next in importance is, whether the matters alleged in relation to the election, and to the returns from the three townships, sustain the charge of insufficiency and invalidity.

First, it is objected that the act under which this vote was taken, entitled, "An act in relation to county seats," (Acts of 1855, chapter 46, page 71,) was not approved by the Governor. The printed copy in the volume of acts is wanting in the evidence of an approval, but the original in the office of the Secretary bears the approval as of the date of January 22d 1855. The copy or certificate of this in the printed acts, is but evidence of the fact, and is not essential, in order that the act may take effect. Such certificate is convenient as evidence of the approval and of the date, but it is not *necessary*.

It is next objected that the records of the county court do not show that notice of the presentation of the petition for holding the election, was given, and it is urged that this is essential to the jurisdiction of that court. And it is further averred that there was no such notice in fact. It is an error to regard this as a jurisdictional matter. This idea pertains to cases where the court acts judicially and in matters between party and party, and not to one of the nature of the

present one, which is a vote of the people. Nor does the want of such notice invalidate the election. In matters of such a public nature the observance of each particular is not held a prerequisite to validity. And it is a general rule of law, that statutes directing the mode of proceeding of public officers, relating to time and manner, are directory. *The People* v. *Cook*, 14 Barb. 261–290; *Marchant* v. *Langworthy*, 6 Hill 646; *The People* v. *Peck*, 11 Wend. 604. But this proposition in not applicable when the statute uses negative words, restricting the action, or when there is something plainly showing a different intent. But there is a peculiar fitness in the rule when applied to popular elections, in which case we may consider the character of the duties and of the men necessarily chosen to perform them. These are usually men not instructed in their duties nor in nice forms and distinctions. Many of their duties, too, are to be performed in haste and amidst confusion, and without opportunity for deliberation. It is true that the last thought does not apply in force to the specific act now in question, but it reaches to some of the objections hereafter made, and besides, whilst it applies to such duties generally, specific instances are not to be singled out as exceptions.

The same tenor of reasoning applies to the objection that the records do not show that notices of the election were posted in the townships, and the averment that such notice was not, in fact, posted in the township of Marietta. And it has been remarked, further, that the people are not to be disfranchised, to be deprived of their voice, by the omission of some duty by an officer, if an election has, in fact, been held at the proper time ; and that such a penalty ought not to be visited upon them for the negligence or wilfulness of one charged with similar duties.

Upon considerations like these the courts have held that the voice of the people is not to be rejected for a defect, or even a want of notice, if they have, in truth, been called upon and have spoken. In the present case, whether there were notices or not, there was an election and the people of

the county voted, and it is not alleged that any portion of them failed in knowledge of the pendency of the question, or to exercise their franchise.

The objections next to be noticed are those relating to the returns themselves. It is alledged that the returns from the townships of Le Grand, Marion and Greencastle are insufficient and should be rejected. Copies of the poll books of the election are made exhibits to the bill.

At the head of the poll list in each of these is a caption showing it to be the poll of an election holden on the proper day, in the above townships respectively, and in the county of Marshall. The exceptions, therefore, that they do not appear to be returns from these townships, nor from townships in the county, are based upon errors of facts and must fail. Each of these contains a certificate of returns signed by three persons styled the judges of election, and attested by two who are styled the clerks of election.

It is not fatal that the full particulars of time and place are not contained in these returns, for the caption and certificate may be taken together, and thus every defect of one is supplied by the other.

A more manifest fault is in the fact that neither the judges, nor the clerks of the election appear to have been sworn. In the case of each of these townships before named, the officers signed a form of oath, but there is no evidence of the oath having been administered. It is urged that this defect entirely vitiates these three returns. But the law is not so. Whilst it is the law that the canvassers cannot adjudicate upon the sufficiency of returns, as we have held in the former case, where a case of this kind comes into a court of justice, such court, or a jury trying it, not only may, but it is their duty to, look behind the returns, and even behind the ballot box in some cases. Thus, were the case on trial upon the facts, the court might receive evidence of these officers having been sworn. *People* v. *Cook*, 14 Barb. 298; *People* v. *Ferguson*, 8 Cow. 102; *People* v. *Vail*, 20 Wend. 12; *People* v. *Seaman*, 5 Denio 409.

And this might be the course in the present cause, but the law goes yet farther.   Neither the election nor the particular returns would be vitiated and subject to rejection if the above officers were not sworn. *People* v. *Cook*, 14 Barb. 286, 287, 297; *Greenleaf* v. *Low*, 4 Denio 168; *Weeks* v. *Ellis*, 2 Barb 320 ; *People* v. *Covert*, 1 Hill 674 ; *People* v. *Hopson*, 1 Denio 575; *In matter of Mohawk and Hudson R. R. Co.* 19 Wend. 135.

Much .more might be said, enlarging upon these points, but the length of this case forbids, and we will but make reference to other authorities upon similar questions, showing that the election and not the returns is the foundation of the right.   3 Mass. 230, 6 Wend. 486, 3 Hill 43, 12 Wend. 481, 11 Wend. 604, 19 Wend. 143, 5 Cow. 269, 4 Cow. 297, 7 Hill 9, 20 Pick. 484–490, 25 Maine 507, 26 Maine 491, 2 Carter Ind. 423.

Another objection, and one going to the validity of the election itself, is that bribery and unlawful means were made use of by the citizens of the town of Marshall, to influence the result.   The first instance of this is that the citizens of Marshalltown agreed to pay five hundred dollars to those of Marion township, to build a bridge connecting the two townships; the second was that the citizens of the former town conveyed certain real estate in Marshalltown to the citizens of the county; and the third is, that two certain persons named Rice, gave their promissory notes, indorsed by others to the county school company, for three thousand and one thousand dollars, respectively; which charges are accompanied by pertinent allegations of corrupt intent, of agreement, and of votes being procured thereby in numbers sufficient to change the result of the election.

We do not think the giving facilities for the public convenience to the whole county, such as furnishing a building for the courts and offices, and thus relieving the county from a burden of expense, amounts to bribery.   Nor would the giving property, though not of that specific character,

but yet adapted to reducing the expense of a change. If the people of a town desire a county seat located at such place, there is no wrong and no corruption in their offering and giving facilities to produce that result. Either in buildings and offices direct, for the use of the public, or in property or money to procure the facilities they may offer to take away, or to lessen the pecuniary burden which would come upon that public, the county, by the location, or by a change of location. And this cannot be bribery. And it may be doubted whether such an act can become bribery when the offer is to the whole county, and upon a matter of county interest only. In a case like the present there is no duty upon the county, from which it, or its citizens, may be induced to swerve. They may adopt which place they see fit, and it is offering additional inducements only in favor of one, to offer as above mentioned.

The other instance, that of agreeing to pay money to erect a bridge between the townships, partakes somewhat more of the nature of an inducement to neglect the public good and consult personal interest, or convenience only; but yet as there is no duty on the citizen to vote one way or the other, but he may act his pleasure from however personal an interest: as the offer is to all the inhabitants of a township, and still more as the thing offered or the purpose intended, is of a public nature, a public convenience, and that too one only facilitating intercourse between the two townships, we can not view it in the light of bribery.

Bribery may be defined to be the giving (and perhaps offering) to another, anything of value or any valuable service, intended to influence him in the discharge of a legal duty. It does not apply to a mere moral duty. Our statute punishes criminally the bribery of public officers, (section 2647-57,) and of electors and the judges, clerks and canvassers of elections, (sections 2691, 2699;) and declares, section 339, that the election of any person may be contested when the incumbent has given or offered any elector, &c., any bribe

or reward in money or property for the purpose of procuring his election.

It does not seem that provisions like these can be extended to a case where, as in the present one, the question is only a local, county question, and the party to be influenced is the entire county, or a whole community which is a portion of itself; and the thing offered is of a public nature pertaining to the public, and not to individuals, consisting of public facilities only.

The remaining instance of alleged bribery is, that two persons gave their promissory notes, indorsed by others, to the Marshall County High School Company. It is to be noticed that the consideration of these notes was that the citizens of Iowa township, and not merely those connected with this company, or school, should vote for Marshalltown. This is somewhat different from the preceding case, in the nature of the thing offered, as it partakes of a private character, but it is still an offer or a gift of facilities to the public of a township, and even of the county. The inducement is public in its nature, and is held out to the entire people of the township. We here repeat the idea that there is no duty incumbent upon this people which they are tempted to violate. Neither are the people officers, legislative, executive or judicial. They are voters who are sought to be influenced in the choice of a county seat by gathering around one of the places proposed, certain advantages promotive of the common convenience and welfare. These are wanting the elements requisite to constitute bribery, or a corrupt and unlawful influence.

In the motion to dissolve the injunction, the respondents assigned thirty causes, embracing those above considered, and in view of the positions taken in respect to these, it becomes unnecessary to examine the remainder. Regarding it as a motion, the conclusion is that the injunction was properly dissolved, and the order should be made perpetual. Regarding the motion as a demurrer, in which light it was

argued, the result is that the facts and grounds alleged in the bill are not sufficient to invalidate the election.

No attention has been given to that part of the bill relating to the forced canvass by the county judge, since under the views taken, it becomes immaterial, for it is not one of the grounds of the bill, that the canvassers have not declared the result of the election; and for the purposes of this bill, it can have no effect whether there has been such a declaration or not.

In conclusion, regarding the motion as one to dissolve the injunction, we are of the opinion that it was properly sustained; and viewing it as a demurrer (in which light it was argued,) we think the facts shown in the bill, are not sufficient to invalidate either the election or the returns from the three townships of Le Grand, Marion and Greencastle.

Therefore, the decree of the District Court is affirmed.