STATE EX REL. W. B. CARSTENS et al., appellants, v. WENDELL MISKIMINS et al., appellees; and As Intervening Parties Plaintiffs, CARL STAMPER, MARGARET Z. HAGE (by CARL STAMPER, attorney in fact) et al., intervenors-appellants.

## No. 48724.

(Reported in 72 N.W.2d 571)

OCTOBER 18, 1955.

Garfield, Baker & Miller, of Humboldt, for appellants.

S. Van Alstine, of Gilmore City, for intervenors-appellants.

Donald G. Beneke, of Laurens, and Willard M. Freed, of Gowrie, for appellees.

OLIVER, C. J.—This is a suit in quo warranto against Consolidated Independent School District of Palmer and its officers and directors, in which plaintiffs and intervenors pray that the organization of said district be adjudicated invalid. Upon trial the court dismissed the petitions. Plaintiffs and intervenors appeal.

The single defect in the proceedings claimed to have invalidated them was the failure of the county superintendent of schools to call the special election upon the proposition of establishing the district, within the time required by section 276.11, Code of Iowa, 1950. There was no irregularity in giving notice

of and conducting the election and there was no pleaded allegation or proof it was not fairly held or that the delay affected the result or was prejudicial or unjust to appellants or others.

In January 1953 a petition for the organization of the consolidated district was filed under chapter 276, Code of Iowa, 1950, with Mrs. Frances Young, Pocahontas County superintendent of schools. April 14, 1953, the final determination of the boundaries of the proposed district was made. Section 276.11 Code, 1950, provided: "* * * the county superintendent * * * shall call a special election in such proposed school corporation within thirty days from the date of the final determination of such boundaries, by giving notice by one publication in the same newspaper * * * which publication shall be not less than ten nor more than fifteen days prior to the election. * * *."

The statute recites the county superintendent shall *call* the election within thirty days by giving notice by one publication. It does not specify when the election shall be *held,* but directs the superintendent to fix that date at from ten to fifteen days after the publication. Nor does it provide that failure to comply with its provisions will invalidate the election.

The language of section 276.11 required Mrs. Young to call the election. Although chapter 276 of the Code had been repealed by chapter 117, section 35, Acts of the Fifty-fifth General Assembly, this repealing Act provided it should not invalidate proceedings commenced prior to its effective date, April 30, 1953. However, certain provisions of chapter 275, Code, 1950, had been amended in 1951 by chapter 94, Acts of the Fifty-fourth General Assembly, and a serious question had arisen whether various procedural provisions of Code chapter 276 were thereby repealed by implication. If section 276.11 was no longer in effect, the county superintendent was not authorized to call the election. The lawyers of Iowa did not know what the courts would decide was the law upon this proposition. In several recent cases able trial courts had arrived at opposite conclusions. Three such cases had been appealed to this court, one of which was soon to be submitted. The situation was unusual. Seldom had there been such uncertainty in this state concerning an important legal question.

Mrs. Young and the Board, with whom she met and discussed the matter, shared this uncertainty. They knew what the procedure had been, but not what it then was. There was a group resisting the organization of the district. The attorney for the proposed new district and the County Attorney advised that the election be delayed until the Supreme Court should decide by whom such an election must be called. Mrs. Young followed that advice. August 25 she again met with the Board. The lawyers were present. It was agreed she should wait thirty days longer for a decision by the Supreme Court. That decision, Smaha v. Simmons, 245 Iowa 163, 60 N.W.2d 100, was filed September 22, 1953. It held the election provisions of chapter 276 had not been repealed by implication and were applicable. Thereupon Mrs. Young promptly called the election by giving notice thereof by one publication. It was held October 13.

The appellants voted. Of 652 votes in the district 623 votes were cast. In the Palmer district the count showed 299 for the new district, 3 against and 3 spoiled ballots. In the outside area the vote was 222 for, 89 against and 7 spoiled ballots. Only 29 eligibles failed to vote. Their votes could not have changed the result. The magnitude of the total, more than 95% of those eligible, is strong evidence the delay in calling the election was without prejudice. The vote was overwhelmingly for the new district, almost 99% in the Palmer district and more than 71% in the outside area.

I. Appellants contend the language of the statute that the county superintendent "shall call" an election within thirty days was mandatory and that by reason of her failure so to do the election was a nullity. The statute uses the word "shall". McDunn v. Roundy, 191 Iowa 976, 979, 980, 181 N.W. 453, 454 points out:

"Every statute prescribing the time and manner and method of holding elections is, of necessity, so worded that it is mandatory in form. * * *.

"The true rule, as thus adopted, is that mere irregularity in conducting an election does not vitiate such election and render the same a nullity, unless some prejudice or injustice is shown to have resulted therefrom."

In the case at bar the distinguished trial court referred to rules of statutory construction set out in 82 C. J. S., Statutes, section 376, and stated:

"The prevailing intent of the legislature was that an election should be ordered and held. Time was of secondary consideration and was intended not to limit power but to insure its timely exercise.

"The consequences resulting from a 'mandatory construction' would be the allowance of a public officer by his inaction, failure or refusal to act within the thirty-day period to disenfranchise the people who by the very terms of the act have the sole right to accept or reject enlargement of the school district. The law would in effect become purposeless. As the situation now stands the people of the involved area have spoken overwhelmingly in favor of consolidation."

Neal v. Board of Supervisors, 243 Iowa 723, 729, 53 N.W.2d 147, 150, states: "Appellant also contends that the notice was not published for the required time and the election is therefore a nullity. Section 345.6 requires that the notice be 'published once each week for at least four weeks.' The purpose of giving the notice is to inform the voters of the election and the proposition to be voted upon in sufficient time to enable them to consider the issues and decide how to vote. 29 C. J. S., Elections, section 71. There is a distinct difference in whether the action assailing the election is brought prior to, or subsequent to, the holding of the same. We have held that the statutory directions as to time and manner of giving notice of an election are mandatory and will be strictly upheld where the action is brought prior thereto. If, however, the action is brought after the election has been held a substantial compliance with the statute is sufficient. Dishon v. Smith, 10 Iowa 212; Knorr v. Beardsley, 240 Iowa 828, 38 N.W.2d 236. A reason for this is that there has intervened an expression of the sovereign will, and where such will is fairly expressed it becomes the duty of the courts to sustain such expression where it can be done by a liberal construction of the laws relating thereto. State ex rel. McNeill v. Long, 178 Okla. 409, 63 P.2d 60. See also 29 C. J. S., Elections, section 81; annotation 119 A. L. R. 656, 661."

Knorr v. Beardsley, supra, 240 Iowa 828, 853, 38 N.W.2d 236, 250, states: "It is a quite general rule that statutory directions as to the time and manner of giving notice of an election are mandatory and will be upheld strictly *before* an election, but that in an action brought *after* an election has been held, substantial compliance is sufficient—the reason being that after the election has been held and the will of the voters has been fairly expressed the courts will seek to sustain it by a liberal construction of the applicable statutes and treat them as directory."

There is similar language in State ex rel. Beu v. Lockwood, 181 Iowa 1233, 165 N.W. 330.

Dishon v. Smith, 10 Iowa 212, 218, a leading case followed by various courts, states:

"And it is a general rule of law, that statutes directing the mode of proceeding of public officers, relating to time and manner, are directory [citations]. * * * But there is a peculiar fitness in the rule when applied to popular elections * * *.

"And it has been remarked, further, that the people are not to be disfranchised, to be deprived of their voice, by the omission of some duty by an officer, if an election has, in fact, been held at the proper time; and that such a penalty ought not to be visited upon them for the negligence or willfulness of one charged with similar duties."

A good statement of the rule appears in Weisgerber v. Nez Perce County, 33 Idaho 670, 674, 675, 197 P. 562, 563, a case cited in Knorr v. Beardsley, supra:

"In some jurisdictions it is held that a strict compliance with the statutory requirements as to the time of giving notice of an election is an essential prerequisite to its validity." (Citing decisions from the courts of five states, decisions of two of which are relied upon by appellants.)

"However, we are of the opinion that the correct rule, and the one supported by the great weight of authority, may be stated as follows: Statutory directions as to the time and manner of giving notice of elections are mandatory upon the officers

charged with the duty of calling the election, and will be upheld strictly in a direct action instituted before an election; but after an election has been held, such statutory requirements are directory unless it appears that the failure to give notice for the full time specified by the statute has prevented electors from giving a full and free expression of their will at the election, or unless the statute contains a further provision, the necessary effect of which is that failure to give notice for the statutory time will render the election void." (Citing decisions from the courts of twenty states, including Dishon v. Smith, supra, 10 Iowa 212.)

II. Most of the foregoing decisions deal especially with the failure to give proper notice of an election. As already stated, the only irregularity in connection with this election was the failure to *call* it within thirty days. This differs from the failure to hold it at the time fixed or to give proper notice thereof. Robinson v. McGown, 104 S. C. 285, 291, 88 S. E. 807, 809, states: "Ordinarily the time fixed by law for the holding of an election * * * is mandatory and of the substance. But this rule is not inflexible, and elections held at other times have been sustained. This case, however, is not within that rule or its reason. The election was held at the time fixed by the order of the Governor. The time within which the order for an election shall be made is a different matter, and the effect of a variance from it rests upon different considerations. The prevailing intent of the lawmakers was that an election should be ordered and held. The specification of the time within which it should be done was of secondary consideration, and was intended not to limit the power, but to insure its timely exercise."

The text in 29 C. J. S. 102, Elections, section 77, states: "So statutes providing for the calling of elections within a specified period have been held directory, * * *."

In Lancaster v. Hamon, 153 Ky. 686, 688, 689, 156 S.W. 142, 143, the statute provided the sheriff " 'shall have the advertisement and notices [of the election] posted * * * within seven days.' " The decision states: "To hold that last provision mandatory would be to say that the sheriff might at his discretion prevent the holding of a local option election in any city

46

or town in this state by merely failing or refusing within the seven days to give the notice. Such provisions in statutes relating to elections are never held to be mandatory unless they affect the real merits of the controversy. The vital thing which that statute requires is to advertise the election *for a given time, and in a prescribed manner,* and any material departure from that we would certainly hold as invalidating the election; * * *."

May v. Drake, 309 Ky. 819, 823, 219 S.W.2d 31, 34, refers to the foregoing decision and another which "held the provisions of the statute with respect to *publication* and *posting* notice are mandatory, but the provisions regarding the time of such publication and posting are directory only. Since in the present case the statute was complied with in respect to the required manner and length of time for *publication* and *posting* of notices, there was at least a substantial compliance with the law and the election was not void."

State ex inf. Gentry v. Lamar, 316 Mo. 721, 725, 291 S.W. 457, 458, states: "Was this requirement [that the election be called within thirty days] mandatory or directory?" The proper notice was given, "the election was regular in all respects; and by the number of votes cast we know the election resulted in a full expression of the voters of the proposed district on the question submitted. This was all the Legislature intended to be accomplished by the act. Having thus concluded, we have answered the above question. The requirement is directory."

Fulton Twp. Sch. Dist. v. School of Essex Twp., 302 Mich. 566, 5 N.W. 2d 467, 470, holds the failure to order a special election within thirty days after the approval of the petition was merely a failure to perform a ministerial act.

People ex rel. Petty v. Thomas, 361 Ill. 448, 455, 198 N.E. 363, 367, states: "His duty to call the election is mandatory in the sense that it cannot be called by any other officer. The holding of the election within the specified period, on the other hand, is a directory provision [citation]. Manifestly, mere delay by the township treasurer in discharging the duty required by law cannot nullify the expressed will of the majority of the voters * * *."

State ex rel. Moulton v. Consolidated Ind. Sch. Dist., 195 Iowa 637, 639, 192 N.W. 5, 6, involved the republication of a

notice of hearing on a petition for the establishment of a district. The court stated: "The duty imposed upon the county superintendent is clearly mandatory: that is, he cannot refuse to act. Doubtless, in case of his refusal to cause the required notice to be published, an action of mandamus would lie, to compel him to do so. * * * The evident purpose of the legislature was to require prompt action upon the part of the county superintendent. His duty to cause the notice to be published within the time fixed is mandatory. The duty imposed is, therefore, an affirmative one; but we are not inclined to accept the view of counsel for appellant that the statute was also intended to place a limit upon the jurisdiction or authority of the county superintendent to cause notice to be published after the time fixed. We need not, however, decide this point."

Cutler v. Board of Directors, 172 Iowa 361, 154 N.W. 671, was an action of mandamus brought January 30, 1914, to compel the defendant Board to call an election for the organization of a district for which a petition had been filed and which the Board had refused to call. The trial court dismissed the petition. Upon appeal, the Supreme Court on October 28, 1915, reversed the judgment and directed the district court to issue the writ of mandamus as prayed.

III. Appellants assert the failure to call the election was not due to mistake or oversight on the part of the county superintendent, but was wilful and intentional. The evidence indicates Mrs. Young's conduct was that of a conscientious public servant who adopted this procedure in the public interest pending clarification of the law. However, the rule is the people will be protected against disenfranchisement by such acts or conduct, although the deviation from the statutes by the officer may be negligent or wilful. Reference has already been made to statements to that effect in Dishon v. Smith, 10 Iowa 212, 218, and Lancaster v. Hamon, 153 Ky. 686, 156 S.W. 142, 143. Cutler v. Board of Directors, supra, 172 Iowa 361, 154 N.W. 671, states merely that there the Board refused to call an election. State ex rel. Rogersville etc. v. Holmes, 363 Mo. 760, 764, 253 S.W.2d 402, 404, which involved the failure of officers to comply with certain time schedules in the reorganization of school districts

quotes from and follows Sutherland, Statutory Construction, Third Ed., 1943, page 102: "For the reason that individuals or the public should not be made to suffer for the dereliction of public officers, provisions regulating the duties of public officers and specifying the time for their performance are in that regard generally directory."

IV. It is true the delay in calling the election, about four and one-half months after the expiration of thirty days provided by the statute, was longer than in most cases. However, in Cutler v. Board of Directors, supra, 172 Iowa 361, 154 N.W. 671, the calling of the election, which had then been delayed twenty-one months by litigation, was required by this court.

We hold the requirement that the county superintendent call a special election within thirty days was directory and that the procedure adopted by her, under the extraordinary circumstances then existing, was in substantial compliance therewith, and was not invalid.

Other propositions presented in the briefs have been considered. These are either without merit or their determination is unnecessary.

The judgment of the district court is affirmed.—Affirmed.

BLISS, SMITH, WENNERSTRUM, THOMPSON, and LARSON, JJ., concur.

GARFIELD, J., takes no part.