THE CITY OF LAFAYETTE ET AL. *v.* THE STATE, EX REL. JENKS ET AL.

CITY.—*Trustees of Water Works.—Election of.—Statute Construed.*—Under the act of March 25th, 1879, Acts 1879, p. 88, "to authorize cities and incorporated towns to construct, maintain and operate water works," etc., and providing for the establishment, by the common council, of a board of three trustees, and for the election of such trustees by the qualified voters of such city or town, and prescribing their powers and duties, the establishment of such board of trustees is not a necessary prerequisite to the election of those officers by the voters of a city.

SAME —*Notice of Election.—Ignorance of Law.*—If the election for such trustees is otherwise regular, the want of any notice thereof, previously

given, will not invalidate it. Nor will the ignorance of the people as to the existence of the law providing for the election of such trustees, affect the validity of the election, as they are bound to take notice of the existence of such law and of the election thereunder.

SAME.—*Trustee's Bond—Duty of Common Council.—Mandate.*—Under said act of 1879, *supra,* it is the duty of the common council to determine; by an order, the sum in which the trustees shall give bond, and this duty may be enforced by mandate.

SAME.—*Establishment of Board of Trustees.—Notice.*—No notice of a proceeding by the common council to establish the board of trustees of the water works, as provided for in said act, is necessary to give it validity.

From the Tippecanoe Circuit Court.

*J. A. Stein, G. O. Behm, A. O. Behm* and *J. P. Jones,* for appellants.

*J. R. Coffroth* and *T. A. Stuart,* for appellees.

WORDEN, J.—Petition for a mandate by the appellee against the appellants, as follows :

"The said plaintiff complains of said defendants, and says, that the relators are now, and for several years last passed have been, resident citizens, tax-payers and voters of said City of Lafayette ; that said defendant The City of Lafayette is now, and for ten years last passed has been, a municipal corporation duly organized pursuant to an act of the General Assembly of the State of Indiana, entitled 'An act to repeal all general laws now in force for the incorporation of cities, and to provide for the incorporation of cities, prescribing their powers and rights, and the manner in which they shall exercise the same, and to regulate such other matters as properly pertain thereto.'" Approved March 14th, 1867.

"That said defendant Kimmel is now, and for two years last passed has been, the mayor of said city ; and that said other defendants are now, and were at the time of the grievances hereinafter mentioned, the councilmen of said city and the only ones, the said city being composed of six wards only, and two councilmen from each ward.

"And plaintiff further avers that heretofore, to wit, in

the year 1876, the said City of Lafayette constructed and became the owner and operator of a system of water works in said city, and from thence hitherto continuously has owned and operated, and yet doth own and operate such water works in said city for the use and benefit of the inhabitants thereof.

"And plaintiff further avers that at the annual city election held in said city on Tuesday, the 6th day of May, 1879, the said relators were duly elected trustees of the water works of said city for terms following, to wit, the said Samuel Ewry for the term of one year, the said Barney Spitznagle for the term of two years, and the said Edward T. Jenks for the term of three years; that on the 8th day of May, 1879, the said relators each received from the clerk of said city, a certificate of his election for the terms aforesaid; that on the day last aforesaid each of said relators took and subscribed the oath of office prescribed by law, and caused the same to be endorsed upon his said certificate of election, and thereupon filed said certificate of election with the said oaths endorsed thereon, in the office of said city clerk.

"And plaintiff further avers that said relators ever since the said election have been and still are each of them able, ready and willing to execute a bond with sufficient surety, in such sum as said common council would or should order.

"And plaintiff avers that said common council have never 'ordered' the amount for which such bond or bonds should be given by the trustees of the water works of said city; that after said annual city election, to wit, on the 12th day of May, 1879, the said common council of said city met in regular session, and failed and refused (although requested so to do) to 'order' the amount of such bond; that afterward, to wit, on the 19th day of May, 1879, and while the said common council were again in regular session, the relators requested, in writing,

the said council to 'order' the amount of such bond, to the end that said relators might execute the same with sufficient sureties to the approval of said council, which written request is in the words and figures following, to wit:

"'To the Mayor and Common Council of the City of Lafayette: The petition of the undersigned respectfully represents: That at the annual election held in the City of Lafayette on the 6th day of May, 1879; the undersigned were elected "Trustees of the Water Works of the City of Lafayette," for the terms following, to wit: Samuel Ewry for one year, Barney Spitznagle for two years, and Edward T. Jenks for three years; that on the 8th day of May, 1879, they each received a certificate of election from the clerk of said city, and subscribed and took, and had endorsed thereon, the oath of office prescribed by law, and filed the same in the office of such clerk. Your petitioners further represent that they are required by law to give bond in such "sum as the common council may order," for the faithful performance of their duties as such trustees, and for the strict accounting for any funds that shall come into their hands. Your petitioners further represent that they are able, ready and willing to give bond in any sum that your honorable body may "order." Wherefore they ask that you "order" the amount for which such bond shall be given. Very respectfully, etc.

(Signed,)           "'SAMUEL EWRY,

                 "'BARNEY SPIZNAGLE,

                 "'EDWARD T. JENKS.'

"And plaintiff further avers that said common council failed and refused, and yet fail and refuse, to order the amount of such bond.

"Wherefore the plaintiff asks that a writ of mandate may issue to said defendants, commanding them and each of them that they, as the common council of the City of Lafayette, shall order and fix the sum at which said rela-

tors, or each of them, shall give bond for the faithful performance of their and each of their duties, as such trustees of water works of said city, and for the strict accounting for any funds that may come into their hands as such trustees," and for all other relief.

Duly verified as required by statute.

The defendants appeared and waived the issuing of an alternate writ of mandate, and filed a demurrer to the petition for want of sufficient facts, which was overruled and exception taken. A part of the defendants then answered as follows :

" The said defendants, except the defendants Murphy, McGrath, McGinley, Duffie and Washburn, for answer to the petition in this case, show to the court :

" That they admit the said City of Lafayette to be a municipal corporation as charged in the petition, and said other defendants are the mayor and common council of said city, and that said city owns and operates a system of water works, constructed in 1876, as charged, and that at the annual city election, held on May 6th, 1879, the said relators received all the votes which were cast for the offices of trustees of the water works of said city, and that they took oath and presented their bonds, as charged in the petition, and that the common council of said city refused to act on said bonds, and that said relators are, and for a number of years last passed have been, resident citizens, tax-payers and voters of said city.

" But these defendants say that the claim which said relators make in their said petition is grounded solely on a statute of Indiana, approved March 25th, 1879, entitled ' An act to authorize cities and incorporated towns to construct, maintain and operate water works, issue and sell bonds to pay for such construction, repealing all laws in conflict with this act, and declaring an emergency;' that although said act went into force and effect from and after its passage and approval, and presumptively was known

by every citizen of the State, yet, as an actual fact, the said defendants were ignorant of its existence, unless one or two of said councilmen knew of it privately, but, if they did so, they did not impart their knowledge to their colleagues in the council; that accordingly said common council omitted to execute said act before said city election by establishing by proper ordinance a board of trustees of the water works, as required by the 6th section of said entitled act; that, even if said common council had been aware of the existence of said statute, they could not, with reasonable deliberation and allowing time for publication, have executed its provisions by ordinance in time to authorize an election of trustees at said city election; that said defendants had no intention or purpose to omit or evade the performance of their duties under the said statute, and that as soon as they were informed of its existence, to wit, on the 12th day of May, 1879, they took action for the passage of an ordinance in accordance with said section 6; that they refused to act on the bond of said relators, being legally advised that their said election as trustees was premature and without authority of law, having been made in advance of the passage of an ordinance establishing a board of trustees of the water works, as provided by said statute; that the government and administration of the water works system of said city has heretofore been, and still is, in charge of an officer appointed by said council, known as the superintendent of the water works, and that no detriment whatever has been occasioned to the public interests by reason of the failure of the common council to carry out the provisions of said act of March 25th, 1879; that at the time said annual election was held, on May 6th, 1879, owing to the prevailing ignorance of the existence of said statute, no previous public notice had been given that any trustees of the water works should be voted for, and the secret of the existence of said statute was perhaps known to only a few of those commonly

considered as the leaders and managers of the Democratic party of said city, who studiously kept their knowledge to themselves, and had their party tickets printed with the names of said relators thereon, which tickets, in order the better to cover the trick which they designed to play upon the honest people of the City of Lafayette, they prevented from being put into circulation until the very morning of said election, and just before the polls were opened in the several wards of said city, by means of which cunning they obtained the field to themselves for their party, and secured for said relators all the votes cast for such trustees; that with but few exceptions the existence of such statute was wholly unknown to the voters of said city at said election; that the aggregate number of votes cast at said election was 3,356, whereas the votes cast for trustees of the water works were far less than half said aggregate, being as follows, viz.: for Samuel Ewry 1,453, for Barney Spitznagle, 1,462, and Edward T. Jenks, 1,449.

" Wherefore the defendants say the said relators are not entitled to the writ of mandamus prayed for by them."

The plaintiff filed a demurrer for want of sufficient facts to the answer, which was sustained and exception taken. The defendants who had answered declining to answer further, judgment as prayed for was rendered against them as well as against those who had not answered.

Error is assigned upon the rulings upon the respective demurrers.

The act of March 25th, 1879, referred to in the answer, (Acts 1879, p. 88,) provides for the erection of water works by certain cities and incorporated towns, and applies to cities and towns in which water works have already been constructed, or are in process of construction. The 6th and 7th sections of the act are as follows:

" Sec. 6. The common council of any city or incorporated town in which water works have been constructed, or are now in process of construction or extension, or where

water works shall hereafter be ordered, shall establish a board of three trustees, to be known as the trustees of the water works. Said trustees shall be elected at the annual city election by the qualified voters of such city or incorporated town, and shall hold their office for the term of three years ; except, that at the first election under this act, one shall be chosen for one year, one for two years, and one for three years, and thereafter, one of the trustees shall be elected annually.

" Sec. 7. Said trustees shall receive such compensation as the common council or board of trustees may determine, and shall give bond, in such sum as the common council or board of trustees shall order, for the faithful performance of their duties, and the strict accounting for any funds that shall come into their hands; and they shall manage, conduct and control the works, furnish supplies of water, collect water rents, appoint all necessary officers and agents, and determine the tenure of office and amount of salaries of the officers and agents so appointed."

Other powers and duties are conferred and imposed upon the trustees of the water works, as that they may make by-laws for the management and protection of the water works, assess and collect water rents, apply any surplus money, after paying the expenses of operating the works, to the repair, enlargement or extension of the works, or to the interest on any loan made for their construction, make monthly reports of receipts and disbursements of money, and weekly deposits with the treasurer, the money deposited to be kept separate and to be drawn out of the treasury only upon the order of two of the trustees, countersigned by the clerk of the water works.

The act repeals all laws and parts of laws in conflict therewith, and took effect from and after its passage, an emergency being declared.

VOL. LXIX.—15

The first question presented by the record seems to be whether the establishment of a board of trustees of water works by the city council was a necessary prerequisite to the election of those officers by the voters of the city.

It is not contended by the counsel for the appellants, as we understand their brief, that the common council may legally, and for all time, refuse to establish such board, and thereby defeat the purpose of the law, and retain control of the water works, instead of letting such control pass to the trustees as contemplated by the act in question. They claim, as we understand the brief, that it was the imperative duty of the common council at the proper time to establish such board, which duty might have been enforced by mandate; but that until the common council had established such board, either voluntarily or in obedience to a mandate, there could be no election of the trustees of the water works.

If the trustees of the water works cannot be legally elected until the common council shall have passed a resolution or ordinance establishing such board, and if the common council refuse to establish such board until compelled to do so by mandate, the evident purpose of the Legislature will be, in a great measure, thwarted and subverted. It was clearly the purpose of the Legislature that trustees should be elected at the city election to be held next after the passage of the act; hence the emergency clause putting the act at once in force, and immediately repealing all laws and parts of laws inconsistent with the act.

The powers and duties of the trustees of the water works are not to be prescribed by the common council. These are provided for by the act itself, and the common council have nothing to do in this respect, except to establish the board.

And it seems to us, taking the entire act into consideration, that it was not the intention of the Legislature, that

the existence or non-existence of the board of trustees of the water works should depend upon the action or non-action of the common council in establishing such board. While it may have been the imperative duty of the common council to establish such board, we do not think their failure to do so prevented the voters of the city from legally electing the trustees as provided for.

The law provides for the election of the trustees absolutely, and not upon the condition that the board shall have been established, or after the same shall have been established, by the common council. The language of the statute is, that "said trustees shall be elected at the annual city election by the qualified voters of said city," etc. The right of the electors thus to elect the trustees can not, as we think, be destroyed by the failure of the common council to discharge a merely formal duty imposed upon them.

The election of the trustees, therefore, was not invalid on the ground that the common council had not established the board previous to the election. It may be here observed, also, that it was the duty of the common council to determine by an order the sum in which the' trustees should give bond; and this duty may be enforced by mandate.

There was an abundance of time after the passage of the act in question, and before the election, for the common council to have established the board of trustees of the water works; and we are not aware that any notice of such proceeding was necessary to give it validity. "Every by-law imposing a penalty or forfeiture for the violation thereof," must be published two weeks. 1 R. S. 1876, p. 297, sec. 57.

But it is insisted by the appellants that the want of notice of the election thus held, combined with the want of any information on the part of so large a number of the

voters of Lafayette as to the existence of the law in question, renders the election a nullity.

If the election was otherwise regular, the want of any notice thereof, previously given, will not invalidate it. *Carson* v. *McPhetridge*, 15 Ind. 327 ; *The State* v. *Jones*, 19 Ind. 356 ; *The People* v. *Cowles*, 13 N. Y. 350 ; *Dishon* v. *Smith*, 10 Iowa, 212 ; *The People* v. *Hartwell*, 12 Mich. 508 ; *The People* v. *Brenham*, 3 Cal. 477 ; *State* v. *Orvis*, 20 Wis. 235 ; *State* v. *Goetze*, 22 Wis. 363.

If the people of Lafayette were so generally ignorant of the existence of the law as is alleged in the answer, that ignorance related to mere matter of law, and not to matter of fact; and they can not complain of their ignorance of law. It is said by a standard author that " Every man is presumed to be cognizant of the statute law of this realm, and to construe it aright; and if any individual should infringe it through ignorance, he must, nevertheless, abide by the consequences of his error. It will not be competent to him, to aver, in a court of justice, that he has mistaken the law, this being a plea which no court of justice is at liberty to receive." Broom Leg. Max. 267.

As all persons interested were bound to take` notice of the existence of the law, and therefore of the election for trustees of the water works to be held under it, there is nothing in the case to take it out of the general rule, that a failure to give the required notice of an election will not render it invalid.

The counsel for the appellant have cited two cases upon which they rely for a reversal of the judgment below ; but we are of the opinion that they are very clearly distinguishable from the case before us. One of the cases is that of *Foster* v. *Scarff*, 15 O. S. 523. In that case, one Casad had been elected probate judge, to serve for a term of three years, but he died before the close of his term, and one Taylor was elected in his place. The governor wrong-

fully commissioned Taylor for the full term of three years, instead of commissioning him for the unexpired term of Casad, as he should have done. Afterward a general election was held, at which it was proper to elect, among other officers, a probate judge for a full term, to succeed the term for which Casad had been elected, and proper notice was given for the election of the other officers, but not for probate judge. The great mass of the voters were ignorant that any one was being voted for for probate judge until about three o'clock on the day of the election, when it was discovered that Foster was being voted for for that office. He received less than one-quarter of the votes cast at that election, and not nearly one-half as in the case before us. He was declared to have been duly elected, but the court held the election invalid. Now it seems to us to be clear, and herein lies the broad distinction between that case and the one before us, that the ignorance of the voters in that case was ignorance of fact, rather than of law. The voters in that case were bound to know that the term of office of the probate judge was three years. That was matter of law. But they were not bound to know when the office had been filled, and, therefore, when the incumbent's term would expire, for that was matter of fact.

The other case cited is that of *State, ex rel.*, v. *Mc Kinney*, 25 Wis. 416. There too the ignorance complained of was ignorance of fact and not of law. The syllabus of the case is as follows: " Where the fact that a vacancy existed in a county office was not known to any considerable portion of the electors of the county, and no public notice was given before the election, officially or otherwise, that such office was to be filled, and the great body of electors who voted for other officers did not vote for any person to fill said office: *Held*, that the election, as to such office, was invalid."

In the case before us, there was no question as to a

---

vacancy in office, and no question of fact, as to which the voters were in ignorance. A new law had been enacted, providing, among other things, for the election of trustees of the water works, and of this law all the voters of the City of Lafayette were bound to take notice.

From the best consideration we have been able to give the case, we are led irresistibly to the conclusion that no error was committed by the court below, either in overruling the demurrer to the petition, sustaining the demurrer to the answer, or in awarding the mandate as prayed for.

The judgment below is affirmed, with costs.

Petition for a rehearing overruled.