# Court of County Commissioners of Colbert Co. v. Thurmond.

*Application for Mandamus.*

1. *Special election; giving of notice therefor.*—Where an act of the General Assembly, providing for a special election, specifies the time at which the election shall be held, the people of the State take notice of such specification of the time as they do of the provisions of any other law, and the requirement in such act of special notice is a merely directory provision; and if there is not sufficient time between the passage of the act and the day specified for the election, to give

the notice provided for in the act, the election will be valid, although such notice was not given.

2. *Same; same; case at bar.*—An act was approved on February 12, 1897 (Acts of 1896-97, p. 820), providing for a special election to be held in Colbert county, for the determination by the voters of said county whether the court of County Commissioners should issue bonds in behalf of the county for the improvement of the public roads. It was provided in said act that the election should be held on March 15, 1897, and it was further provided that such election should be ordered, called and governed by the general election law, which law required that thirty days notice of an election should be given by publication in a newspaper published in the county. By reason of the times of the publication of the newspapers in the county, it was impossible to give thirty days notice of the election, and only eleven days notice was given by publication, which was the only notice practicable. *Held:* That the election held on March 15, 1897, at the time specified in the statute was valid, notwithstanding the failure to give thirty days notice of the holding of said election.

APPEAL from the Circuit Court of Colbert.

Heard before the Hon. THOMAS R. ROULHAC.

R. J. Thurmond, a citizen of Colbert county, filed his petition, addressed to the Judge of the Circuit Court of Colbert county, asking for a writ of *mandamus,* to compel the court of county commissioners of Colbert county and the treasurer of Colbert county to issue $100,000 worth of bonds which were authorized to be issued under the provisions of the act approved February 12, 1897, (Acts of 1896-97, p. 820), for the purpose of constructing, repairing and improving the roads in Colbert county.

In his petition, the petitioner averred that the provisions of the act under which the bonds were authorized to be issued had been carried out, and that upon the election being held on March 15, 1897, for that purpose, it had been ascertained that the majority of the qualified voters of Colbert county who voted at said election, were in favor of the issuance of said bonds ; but that the board of county commissioners, and the treasurer of the county, ignored their duty in the premises and declined to issue said bonds. It was further averred in said petition that the petitioner was one of the road commissioners appointed under the provisions of said act, and that he owned valuable land adjacent to one of the public roads of the said county, which were to be macadamized by the use of the proceeds of the bonds, which were authorized to be issued.

In their answer to the rule *nisi*, which was issued, the court of county commissioners and the treasurer of Colbert county averred that the act approved February 12, 1897, required that the election therein provided for should be conducted under the general election laws of the State ; that the general election laws of the State required 30 days notice before an election ; and that the 30 days notice had not been given before the election held in Colbert county on March 15, 1897, but that only 11 days notice was given.

Upon the hearing of the petition and answer, the sheriff of the county testified·that he gave 11 days notice of the time and place of holding said election by publication in a newspaper, published in Colbert county, and that this publication was made by him as soon as it was possible after he had received the copy of the act. .

The judge, upon the hearing, granted the prayer of the petitioner, and ordered the writ of *mandamas* to be issued in accordance therewith. From this judgment, granting the writ of *mandamus*, respondents appeal, and assign the rendition thereof as error.

KIRK & ALMON, for appellant.—The election involved in this case was invalid. The evidence shows that the notice which·was required by the act was· not given. Acts of 1896-97, p. 820. The election might have been held on any other than the day named, if the necessary notice had been given, without prejudice to anybody. When the length of time of the notice is fixed by statute, a shorter time will not suffice.—6 Amer. & Eng. Encyc. of Law, 300 ; *George v. Oxford,* 16 Kan. 72 ; *Foster v. Scarff,* 15 Ohio St. 532 ; Leading Cases on Elections, pp. 679, 684.

R. W. WILHOYTE, *contra.*—There was nothing shown by the evidence in this case that would justify the conclusion that the election was not valid. The act names a positive day for holding the election, and this day can not be changed, except by the General Assembly.—Mc-Crary on Elections, § 176. Where the time of notice of an election can not be given, a failure to give such notice will not invalidate the election.—6 Amer. & Eng. Encyc. of Law, 302 ; *People v. Cowles,* 13 N. Y. 508 ; *State v. Jones,* 19 Ind. 356 ; *City of LaFayette v. State,* 69

Ind. 218; *Smith v. Crutcher*, 92 Ky. 586; *Berry v. Mc-Collough*, 94 Ky. 247; Cooley on Constitutional Limitations, § 603.

HEAD, J.—The single question presented by this record, is whether the special election held in Colbert county, on March 15, 1897, for the determination, by the voters of the county, whether the court of county commissioners should issue certain bonds in behalf of the county, for the improvement of the public roads, was valid or not, inasmuch as thirty days notice of the election was not given. The act of the legislature, under which the election was held (Acts of 1896-97, p. 820), by its terms, fixed March 15, 1897, as the day upon which the election should take place. It was approved February 12, 1897. It contained the provision, that "such election shall be ordered, called and governed by the general election laws of this State in force at the time of said election." That law requires thirty days notice of the election to be given by publication in a newspaper published in the county.

The proof shows that, in view of the times of publication of the newspapers in the county, it was impossible to give thirty days notice of the election, in the manner required by the general election law, after the passage of the act, and prior to the time fixed by the act for the election to be held. Such notice as was practicable to have been given, was given, to-wit, about eleven days, and upon this notice the election was held.

It is not to be disputed that the General Assembly, in enacting this law, intended it should have force and operation. It did not intend that the law itself should be defeated by reason of inconsistent provisions in it. By its express terms the day of election was fixed. That is clearly mandatory, and no valid election could have been held on any other day.—McCrary on Elections, (3d ed.), § 141; Throop on Public Officers, § 148; 6 Am. & Eng. Encyc. of Law, 318. The notice required by the act was not expressly defined. The machinery provided for holding the election, including the notice to be given, was by a general reference to, and adoption of, the general election law. If, therefore, the requirements of a prescribed notice were, in general, deemed mandatory and not directory, in order to give force to

the act in question, the provision for notice made in this general way, would be made to give way to the express mandatory requirement that the election should be held on March 15, 1897.

But, aside from this, the authorities seem to be practically one way, and we accordingly so hold, that when the law prescribes the time and place of election, as in this case, the people take notice of it as they do of any other law, and if a special notice is required to be given by an officer, the provision is deemed directory merely. The doctrine is thus stated by Cooley on Con. Lim., marg. p. 603 : ''The notice to be thus given is only additional to that which the statute itself gives, and is prescribed for the purpose of greater publicity; but the right to hold the election comes from the statute, and not from the official notice. It has, therefore, been frequently held that when a vacancy exists in an office, which the law requires shall be filled at the next general election, the time and place of which are fixed, and that notice of the general election shall also specify the vacancy to be filled, an election at that time and place to fill the vacancy will be valid, notwithstanding the notice is not given; and such election can not be defeated by showing that a small portion only of the electors were actually aware of the vacancy, or cast their votes to fill it. But this would not be the case if either the time or the place were not fixed by law, so that notice became essential for that purpose.'' The following authorities are to the same effect : McCrary on Elections, §§ 143, 144, 145; Throop on Pub. Officers, § 150; *People v. Cowles*, 13 N. Y. 508; *State v. Jones*, 19 Ind. 356.; *City of LaFayette v. State*, 69 Ind. 218; *Smith v. Crutcher*, 92 Ky. 586; *Berry v. McCollough*, 94 Ky. 247; *People v. Hartwell*, 12 Mich. 508.

In *Powell v. Jackson Common Council*, 51 Mich. 129, the case was practically the same as the present, and it was held, opinions by SHERWOOD and COOLEY, JJ., that the statutory notice was dispensed with where the law was passed too late to give it before the election.

We are compelled to hold that the election was lawful, and that the circuit court was right in granting the *mandamus*.

Affirmed.