State ex rel. Hopkins vs. Olin.

STATE *ex rel.* HOPKINS vs. OLIN.

QUO WARRANTO — NATURALIZATION: *Declaration of intention, where and before whom to be made — Compelling witnesses to testify whether and how they voted at an election — Other evidence of the fact — Burden of proof, presumptions of law, etc., in questions of title to an elective office.*

1. Under sec. 68, ch. 13, R. S., the clerk of a circuit court of this state is authorized to appoint *only one deputy*, and, so long as the appointment remains unrevoked, any further appointment is invalid; and such deputy can perform official acts *only in the clerk's office or in court.*

2. Whether an alien's declaration of his intention to become a citizen of the United States (under the act of congress of May 24, 1824) can be made before the *deputy* clerk, or only before the clerk himself, is not here decided.

3. In an action to try title to office, a witness cannot be *compelled* to testify whether he voted at a particular election, when his evidence would tend to criminate himself; and in case of such compulsion, a *party* to the suit may take advantage of the error, by exception.

4. Whether persons voting at any election in this state (and not excused on the ground above mentioned) can be compelled in such an action to testify *how* they voted, is not here decided.

5. But in either case the privilege of refusing to answer is personal to the witness; and if he waives it, his testimony is admissible.

State ex rel. Hopkins vs. Olin.

6. After A has declined to testify in such an action whether and how he voted at a certain election (on the ground that his answer might criminate himself), B may be permitted to testify that A had told him before the trial that he did vote at such election, and how he voted, and that he (A) was an alien and had not declared his intention to become a citizen.

7. The fact that three years have expired since a person of foreign birth " declared his intention," does not raise a presumption that he has actually become a citizen.

8. Nor does the fact that he made such declaration before a person not authorized to receive it, raise a presumption that he has since made a valid declaration ; but it raises the contrary presumption.

9. The burden of proof is upon the party denying the legality of a vote actually cast. But,

(1.) It being shown that the voter, being of foreign birth, had made a declaration of his intention to become a citizen, which was void, the party insisting upon the legality of the vote must show that he had also made a valid declaration, or had been admitted to citizenship.

(2.) Where it was shown that in neither of the two counties where such voter had resided a large portion of his time since coming to this country, was there any record of his declaration of intention : *Held*, that the burden of proof was changed.

(3.) Proof, by residents of a town or village, that no such persons as some whose names are on the poll list as having voted at the election, were known by the witnesses to have resided in such town or village, will authorize the jury to find that such names are fictitious, or belong to persons who were not legal voters in such town or district, unless other proof to the contrary is given.

10. *It seems*, that it is a matter of law for the court to determine, whether the party denying the legality of a vote cast has introduced sufficient evidence to change the burden of proof.

11. *It seems*, that, after actual admission to citizenship, the regularity of the preliminary declaration cannot be inquired into.

12. A vote obtained by bribery is illegal, and should be rejected on proof thereof in *quo warranto*.

APPEAL from the Circuit Court for *Green Lake* County.

An alternative *mandamus* issued from said court to the defendant *Olin*, as sheriff of Green Lake county, requiring him to remove his office to the village of Princeton, in said county, or show cause, etc. The relator alleged that at an election held in said county in April, 1866, pursuant to chapter 148,

Laws of 1866, there were one hundred and five more votes cast in favor of the removal of the county seat to said village of Princeton than were cast against such removal. The return and answer of the defendant denied this allegation, alleging the illegality, on various grounds, of several hundreds of the votes cast for the removal of the county seat to Princeton, and averring that a majority of all the legal votes cast upon that question, at said election, was against such removal. There was a reply in denial, which also alleged the illegality of a large number of the votes cast at said election against the removal of the county seat. On the trial, one Sargent, for the relator, testified that he then was, and had been for eight years, clerk of the board of supervisors of said county; and he produced the returns of said election filed in his office, and the same were put in evidence, and showed 1,081 votes in favor of the removal, and 976 against it. Evidence to impeach the legality of certain of the votes cast was then introduced by both parties. One Long testified that he was clerk of the circuit court for said county from 1861 to the 1st of January, 1867; that one Sargent was his " regular deputy clerk " during all that time, and he never revoked his appointment; that he had appointed certain other persons " special deputies for the purpose of receiving declarations of intentions to become citizens; that these persons acted for that purpose away from the clerk's office; that none of the persons who declared their intentions before them ever appeared and declared their intentions before him (witness), to his knowledge; that these deputies took blanks from him, with seal attached, and returned them to him." The respondent then introduced evidence in regard to persons of foreign birth who had voted at said election in favor of the removal of the county seat, showing: 1. That some of them did not appear from the records in the clerk's office ever to have declared their intentions to become citizens. 2. That others declared their intentions before Sargent, the deputy clerk, when away from the county

seat.   3. That others made such declarations before the "special deputies" above mentioned.   4. That others were not residents of the town or village in which they voted.   5. That, as to others, there was no record of their naturalization or declaration of intention either in Green Lake county or in Marquette county, out of which the former was taken in 1858 ; and that their neighbors, acquaintances and families had no knowledge of their being naturalized, or having declared their intentions. Defendant also called ten persons as witnesses, who refused to state whether they voted at said election, or how they voted, or as to their qualifications, on the ground that their answers might criminate themselves; and thereupon introduced one Du Quine as a witness, who testified that each of said persons had told him (said witness) before the trial, that he voted for the removal of the county seat to Princeton at said election, and that he was a foreigner and had not declared his intention to become a citizen.

Charles Swenser, called for defendant, having refused to answer similar questions, on the ground that his answers might criminate himself, the court decided, that, if the witness had made *any* declarations of his intention, although the same was not made according to law, he would be required to answer all these questions, and that this rule would be adhered to throughout the trial ; and he required said witness to answer the questions, which he did, stating that he voted at said election in favor of removing the county seat, and that he was of foreign birth, and had made his declaration of intention before one of said "special deputies."

The court refused to instruct the jury, as requested by the relator: (3.) That " a foreigner who has declared his intention to become a citizen of the United States, and taken the oath required before a deputy clerk of the circuit court of any county in this state, is a legal voter." (4.) That when it is shown that he has declared his intention, and taken the oath

before a deputy clerk more than three years before the election, he is to be presumed a legal voter, unless it is also shown that he is not admitted to full citizenship. (5.) That when he has thus declared his intention, and taken the oath before a deputy clerk, he is to be considered a legal voter, "unless it is shown that he had never made any other declaration of intention and taken the required oath, or unless such declaration was made so short a time before the election as to induce the jury to believe that no other could have been made. (6.) "That the fact that there is no record of such declaration in Marquette or Green Lake counties, within which counties it is proved that the voter has resided a large portion of the time since he came to this country, is, from the manner in which such records are shown to have been kept, not sufficient proof that the voter has not duly declared his intention to become a citizen." (7.) "That the fact that a neighbor of a voter foreign born has no knowledge that the voter has declared his intention to become a citizen, or that he is naturalized, is not evidence that he has not so declared his intention or been naturalized, unless it is shown that the intimacy between the parties was such that such neighbor must, beyond a reasonable doubt, have known the fact if it were so." (8.) "That the burden of proving a vote illegal, and for which side the vote was cast, is on the party attacking the vote; and where the voter, as a witness upon the stand, said he did not know how he voted, in the absence of other testimony there is nothing proved; and the jury are not at liberty to infer or assume any thing from the manner or appearance of the witness, as to how he voted." (9.) That in the case of a voter who has declined to testify, his declarations out of court and not under oath, as to his qualifications to vote, are not evidence, unless offered by the opposite party for the purpose of discrediting the witness. The court then instructed the jury — (1 and 2.) That a declaration of intention to become a citizen, whether to the "regular

. State ex rel. Hopkins vs. Olin.

deputy" of the clerk of the circuit court, or to other persons appointed as additional deputies, if not made either at the clerk's office or in court, but at some point away from the county seat, was invalid. (5.) That in cases where the defendant had proved, to the satisfaction of the jury, that votes were cast in favor of the removal of the county seat by persons of foreign birth, and had also offered other proof which rendered it probable that such persons were not citizens of the United States, and never had declared their intention of becoming such, the jury were at liberty to reject their votes as illegal, unless the plaintiff had offered some evidence of their right to vote. (7.) That where persons of foreign birth, and who had so voted, had been called as witnesses and refused to answer touching their qualifications, on the ground that it might tend to criminate them, if defendant had offered evidence that there was no record of their naturalization or declaration of intention in the county where they voted, the burden of proof was changed, and, unless plaintiff had introduced evidence showing their right to vote, their votes should be rejected. (8.) That in such cases slight proof, tending to raise a presumption that the persons never had been naturalized or declared their intention — such as, that there was no record of either of those facts in the county where they resided and voted, and that persons who have known them never knew of their having any naturalization papers, is sufficient to warrant the jury in rejecting their votes, unless there was affirmative proof of their right to vote. (9.) That the burden of proof was on the plaintiff to show that a majority of the legal votes cast at the election in question was in favor of the removal of the county seat to Princeton. (14.) That the jury were the exclusive judges of the credibility of witnesses, and of all questions of fact submitted to them. (15.) That where any person who voted illegally at said election in favor of such removal, had stated as a witness that he could not tell or did not remember which way he voted, if the jury were satisfied from his man-

State ex rel. Hopkins vs. Olin.

ner of testifying, or from any other evidence in the case, that he was concealing the truth, and that, in fact, he voted for such removal, they might so find. (16.) That where it had been shown that no such persons as some whose names were on the poll-list of any town or village as having voted at said election, were known to have resided in said town or village by persons who themselves resided there, the jury might find, if they believed from the evidence that such was the fact, that such names were either fictitious, or those of persons who were not voters in such town or village, unless there was proof to the contrary. (17.) That where it had been proven that votes were cast in favor of such removal by persons of foreign birth, and that members of their respective families had no knowledge of their having ever been naturalized, or declared their intention of becoming citizens, and that such voters had resided in said county ever since they came to America, and that there was no record of their naturalization or declaration of intention either in Green Lake county, or in Marquette county prior to the separate organization of the former, the burden of proof was changed. (18.) That if any person who voted for Princeton at said election was induced so to vote by the payment or promise of any money or other valuable consideration for such vote, his vote should be rejected as illegal; and this, although he may have been employed at the same time to peddle tickets, or render other services, for which he was also to receive a compensation.

The jury found that the number of illegal votes shown to have been cast at said election was *in favor* of a removal of the county seat, 187; and *against* such removal, 41; and that the majority of the legal votes cast *against* such removal was 41; and judgment was rendered for the defendant; from which the plaintiff appealed.

*H. L. Palmer*, for appellant, argued that the clerk's duty in taking a declaration of intention to become a citizen is *ministerial*, and not *judicial*, and could therefore be performed by

deputy (R. S. ch. 13, § 68 ; *Lynch v. Livingston*, 2 Seld. 422) ; that a special deputy appointed for the purpose of taking such declaration is a clerk *de facto*, and the legality of his appointment can be questioned only in direct proceedings to which he is a party (*Carleton v. The People*, 10 Mich. 250); that the right to appoint such might fairly be inferred from the statute, and the general practice, tending to the public convenience, ought to be upheld by the court; and that there is nothing in the acts of congress relating to naturalization that requires the declaration to be made in the clerk's office or in court.   2. A legal voter cannot be interrogated as to how he voted at an election.   *Locust Ward Case*, 4 Pa. Law Journ. 341; Cushing's Law & Pr. of Leg. Ass., p. 73, § 199; 16 Cong. Globe, 456.   See also *Carpenter v. Ely*, 4 Wis. 420, 430.   The court erred also in requiring witnesses to answer so as to criminate themselves. 1 Greenl. Ev. § 451, and cases there cited.  Counsel also argued that the court erred in its instructions to the jury.

*E. L. Runals*, for respondent, contended, that, under the statute (R. S., ch. 13, § 68), the clerk can appoint but one deputy, and he can act only in the absence of the clerk, and only in the clerk's office or in court; and that such deputy has no power to take a declaration of intention to become a citizen. 1 Greenl. Ev., § 506 ; *Lothrop v. Blake*, 3 Barr, 483, 495; *Morris v. Patchin*, 24 N. Y. 394.   He also argued that the instructions of the circuit court as to a change in the burden of proof were correct, citing 1 Greenl. Ev., § 79 ; 24 Pick. 374; 15 La. Ann. 509; 30 Ill. 347; 27 N. Y. 45.

DIXON, C. J.   The act of congress of May 24, 1824 (4 Statutes at Large, p. 69), modifying the previous acts on the subject of the naturalization of aliens, authorizes the making of the declaration of intention of any alien to become a citizen of the United States before *the clerk* of any of the courts

named in the act.   Whether such declaration may, under any circumstances, be made before the *deputy* of such clerk, or must in all cases be made before the clerk himself, is a question which has been argued in this case, but which, not being necessary to the decision, will not be decided.   The authorities cited (3 Pa. St. 483, 495, and 24 N. Y. 394) on the subject of the authentication of the records and judicial proceedings of one state to be used in the courts of another, where the language of the law of congress is the same, and requires the papers to be attested by the clerk, certainly seem very strongly to sustain the position that the declaration must be made before the clerk himself, and not his deputy; but of this we express no opinion.

The other questions presented by the record with regard to the persons before whom such declarations may be made, and which we must decide, are, whether they can be made before any person appointed by the clerk of the circuit court as a deputy, in addition to the regular deputy of such clerk, who was at the time duly qualified and acting, with his appointment unrevoked; and whether they may be made before such regular deputy, not at the office of the clerk, and in his absence, but at some distant part of the county.   These are questions which depend upon the construction to be given to a section of our own statutes.   If the clerk cannot appoint such additional deputies, or if the regular deputy cannot act when away from the office of the clerk, then it seems clear that the declarations made before such persons or under such circumstances must be invalid under the law of congress.

The section referred to is in these words:   " Each clerk of the circuit court shall appoint a deputy, which appointment shall be approved by the judges of the circuit court, but may be revoked by such clerk at his pleasure; and such appointment and revocation shall be in writing, under his hand, and filed in his office; and in the absence of the clerk from his office, or from the court, the deputy may perform all the duties of such

clerk." R. S., ch. 13, § 68. The language of this section is very explicit. It authorizes the appointment of but one deputy, and, as if to limit and precisely define his powers, it expressly declares where and under what circumstances he may act. We hold, therefore, that no deputy in addition to the regular deputy can be appointed, and that such regular deputy can perform no official acts when away from the office of the clerk or from the court.

It was error to compel the witness, Charles Schwenser, against his objection that his answer might tend to criminate himself, to testify whether he voted at the election, and how he voted. It appears that the witness was an alien, who had not been naturalized nor declared his intention to become a citizen of the United States agreeably to law. It was a penal offense for such a person to cast a vote. R. S. ch. 169, § 34. And, though the objection is one which must be made by the witness himself, yet, it seems that the disregard of his privilege is a matter to which a party to the action may except, and which will be corrected on writ of error or appeal from the judgment. 24 Pick. 366 ; 4 Cush. 594. But as the jury have returned a special verdict, by which they find that there was a majority of forty-one legal votes cast against the removal of the county seat, and as this exception affects but one vote, that of this witness, given for the removal, the error of the court in compelling him to testify becomes immaterial to the determination of the case. Count his vote for the removal, and there is still a majority of forty legal votes against it.

So far as the argument before this court, with regard to the privilege of this witness, is put upon the ground of the secret ballot, or that persons voting by written or printed ballots cannot be compelled to disclose how they voted, it is enough to say, that, as it does not appear that any such objection was taken in the court below, it cannot be properly urged or considered here.

And the same observation is true of this objection whenever urged throughout the case. It is brought forward in this court for the first time, and was not in any instance taken on the trial below. All the courts agree that the privilege of declining to answer on this ground, like that of declining because the answer will have a tendency to expose the witness to punishment on some criminal charge, is the privilege of the witness, and not of the party against whom he is called to testify. It is well settled with respect to such objections, that, to be available on error or appeal, it must distinctly appear that they were taken at the proper time and in the proper form, that is, by the witness himself; though, as the only means of correcting errors, if the privilege be improperly denied by the court, exceptions to the ruling may be taken by the party on trial. 4 Cush. 594.

The testimony of the witness Du Quine was properly received. He testified, that of ten witnesses who had been severally sworn, and each of whom declined to answer whether he had voted at the election in question, and how he voted, on the ground that the answer might tend to criminate himself, each of them had told him before the trial that he had voted at the election for the removal of the county seat, and that he was a foreigner, and had not declared his intention to become a citizen. The objection to this evidence is, that it was hearsay. To a certain extent this may be so; but the well-settled and uniform practice is, to allow it in contests of this nature. *The People* v. *Pease*, 27 N. Y. 45, and authorities there cited. The reason of the rule, or rather of the exception, is, that a person who has voted at an election is always considered as a party when the result of the election is in controversy, and on that ground his declarations, voluntarily made, are admissible. It is considered to be a question between the voter and the party questioning his vote, and not merely between the party holding the office and him who claims it.

The other exceptions taken on the trial will be more conveniently considered in connection with the several instructions given and refused, and which are the proper subjects of review on this appeal.

We will proceed first with the instructions asked by the relator and which were refused, being those numbered three to nine, inclusive.

The third instruction was too broad. It included every declaration made before any of the numerous additional deputies shown to have been appointed by the clerk, and those made before the regular deputy when away from the office of the clerk.

The fourth instruction is not so clear, and we are not sure that we correctly understand it. We suppose the intention was to charge that after the expiration of three years from the time any foreigner has declared, however irregularly, his intentions to become a citizen, the presumption is that he has become such citizen by being finally admitted as prescribed by the laws of congress, unless the contrary be shown.

The act of congress of May 24, 1824, above referred to, and which has been in force ever since that time, provides that any alien may be admitted a citizen of the United States at the expiration of two years after he has declared his intention to become such, but he must in all cases have resided in the country for the period of five years. Now, inasmuch as the declaration of any alien may be made immediately after his arrival in this country, it follows in every such case that there could be no presumption of actual citizenship arising from the fact of such declaration, after the expiration of two or even three years from the time it was made. It might be five years, or nearly so, before the alien would be entitled to admission. For this reason we think the instruction was erroneous, and properly refused. And we think it was so for another. In this state, where, by the constitution, after one year's residence in the

state, aliens are admitted to the full privileges of citizenship so far as the right to vote is concerned, by simply declaring their intentions agreeably to the laws of congress, we think no such presumption should prevail. With the privileges thus accorded to them upon their mere declarations, it is a matter of common experience that great numbers of them defer being admitted as citizens for many years after they are entitled to be, and very many are never so admitted at all.

The fifth instruction was for a like reason properly refused. The declaration by an alien of his intention to become a citizen, made before a person not authorized to receive the same, constitutes no ground for presuming that a subsequent valid declaration has been made before an officer who was authorized. The presumption would seem to be the very reverse. Having made one declaration before a person of supposed competent authority, it is very improbable that he would make another before the first was ascertained to be actually defective. It being shown, then, that a void declaration was made by a person of foreign birth who voted at the election, it follows as to such person, that the burden of proof was changed, and his vote was to be rejected, unless it was shown by the party claiming the benefit of it, that he had actually made a valid declaration, or had been admitted a citizen of the United States, which last, it seems, being in the nature of a judgment, concludes all investigation into the regularity of the preliminary declaration.

The sixth instruction was also properly refused. The absence of any record of the declaration of intention in the counties of Marquette and Green Lake, within which counties it was proved that a person of foreign birth voting at the election had resided a large portion of the time since he came to this country, is, in our judgment, sufficient to change the burden of proof, and to require of the party insisting upon the legality of his vote, to show by competent evidence either that he had declared his intention to become a citizen in conformity to law,

and was thus qualified to vote, or else that he had become a citizen of the United States. The negative in regard to either of these facts is a matter of extreme difficulty to prove. It may be said to be nearly, if not wholly, impossible for the party alleging the disqualification to obtain the requisite evidence of it; while if it be true that the person casting the vote was qualified, and the evidence thereof exists, it is an easy matter for the other side to produce it. We have already seen that the voter himself is regarded as in some sense a party to the proceeding. If he has declared his intention, or been naturalized, he has the evidence, and in every instance will most willingly furnish it, in order to establish the legality of his own vote. Yet in all cases some positive evidence must be given by the party claiming the negative, tending to establish it, and so as to overcome the presumption of innocence arising from the person having voted. He will not be presumed to have voted in violation of law. The question is, How much or what evidence is necessary to rebut this presumption, and require the other party to go into proof of the affirmative? This, of course, must depend on the nature of the case. We are of opinion that the proof upon which this instruction proceeded, and which was embodied in it, was sufficient for that purpose. "Full and conclusive proof," says Judge SELDEN, "where a party has the burden of proving a negative, is not required; but even vague proof, or such as renders the existence of the negative probable, is, in some cases, sufficient to change the burden to the other party." See *The People v. Pease*, 27 N. Y. 75, 76, and cases there cited.

The seventh instruction may have been correct enough as an abstract proposition of law, but was correctly refused by the court, because it was abstract and irrelevant to the proofs made in the case. There was no proof by "a neighbor of a voter foreign born," that he had no knowledge that the voter had declared his intention to become a citizen, or that he was natur-

alized.  On the contrary, the record shows, as to sixteen persons who voted for the removal of the county seat, and to whom alone this instruction was applicable, that they were foreign born, that there was no record of their naturalization or declaration of intention to become citizens in Marquette or Green Lake county, " and that *their neighbors and acquaintances and families* had no knowledge of their being naturalized or having declared their intention to become citizens."  These proofs were, we think, quite sufficient to impose upon the relator the necessity of showing that the persons so voting had been naturalized or had declared their intention to become citizens.

The eighth instruction contains two distinct propositions, the first being introductory to the second.  The first announces a correct principle of law, especially when joined with proper instructions as to the evidence necessary to change the burden of proof when the inquiry involves the establishment of a negative.  With suitable instructions upon this point, it is very clear that the burden of proving a vote illegal, and for which side it was cast, is on the party attacking the vote.  But the other proposition we do not think was correct.  To charge, of a person voting at the election, who, as a witness upon the stand, said he did not know how he voted, that, in the absence of other testimony, there was nothing proved, and that the jury were not at liberty to infer or assume any thing from the manner or appearance of the witness as to how he voted, would, in our judgment, be to exclude one of the principal tests, and in some cases the most efficacious test, by which the jury are to arrive at the truth.  We understand that the jury are always at liberty to scrutinize the manner and appearance of every witness; and if they are such as clearly to convince the jury that the witness testifies falsely, or willfully conceals the truth, or denies his knowledge of a fact, the jury must find according to their convictions of the truth.  " The air and manner of giving evidence often convey such convictions with them, as will

induce the court and jury to believe or reject what the witness has sworn." Bac. Abr., "Evidence E." "They are," says Mr. STARKIE, "circumstances which are of as high importance as the answers themselves." We think, therefore, the court was right in rejecting this instruction, and in giving a counter instruction subsequently by the respondent upon the same point, and which will hereafter be noticed.

The ninth instruction has already been disposed of in our consideration of the witness Du Quine. It was erroneous, and ought not to have been given.

We now come to the several instructions asked by counsel for the respondent, and which were given, and to which exceptions were taken by the relator.

Those numbered one and two are correct. They involve only the questions first decided in this opinion, of the power of the clerk of the circuit court to appoint additional deputies, and the authority of the regular deputy to receive declarations away from the office of the clerk. Of those questions nothing more need be said.

Instruction number five presents a point of more difficulty. By this instruction, all questions of the sufficiency of evidence to change the burden of proof, and to authorize the jury to reject votes cast in favor of the removal of the county seat by persons of foreign birth, unless some evidence was given on the other side showing the right of such persons to vote, were submitted as matters of fact to the consideration of the jury. Of the correctness of this instruction, we have very serious doubts. We think it a matter of law for the court to determine, when the burden of proof is changed, or the kind or degree of negative evidence upon which the jury may safely act in rejecting such votes, where the right of the persons who cast them is not sustained by affirmative proof given by the party claiming them to be legal voters. But, as the giving of this instruction could have affected the verdict of the jury only as to seventeen votes,

or at most only as to thirty, the error became immaterial. It appears from the bill of exceptions that as to seventeen persons of foreign birth voting at the election, the only negative evidence offered by the respondent to show that they were not qualified voters were the records in the office of the clerk of the circuit court of Green Lake county, from which it appeared that they had not declared their intentions to become citizens of that county. It is also possible that the same evidence and no more was given as to the disqualifications of thirteen other persons of foreign birth who voted at the election, though it would seem from other parts of the bill that as to several, perhaps all, of these, other and more direct proofs were made to show that they were disqualified, such as that they had declared their intentions to become citizens before some of the additional deputies appointed by the clerk, or before the regular deputy when absent from the clerk's office. It also appears that the evidence by the records of Green Lake county was received under objection and exception by the relator. It is true, it does not distinctly appear how these thirty persons voted, but, as the bill of exceptions does not purport to contain all the evidence, we assume, since that could be the respondent's only object in attacking their votes, that it was proved that they voted for the removal of the county seat. Now the instruction in question left it for the jury to say whether upon this evidence alone the votes of these thirty persons ought to be rejected. If the determination of the controversy depended upon these votes, or if they were sufficient in number to change the result, as found by the special verdict of the jury, then we should have great hesitation in affirming the judgment. It seems to us that the presumption of innocence arising from the fact of voting is not to be overcome by such slight evidence. But since, as to all the other persons of foreign birth who voted at the election in favor of the removal of the county seat, and whose votes were attacked by the respond-

ent, the evidence given was such as, according to the principles laid down in this opinion, the jury ought to have rejected their votes, we hold that the errors committed in this instruction are not material.

The correctness of instructions numbered seven and eight need not be considered. There were but ten persons of foreign birth who were called as witnesses, and refused to answer whether they had ever been naturalized or declared their intentions to become citizens, under instructions from the court that they were privileged, as witnesses, to decline to answer any questions that might tend to criminate them. Those ten were the same ten of whom the witness Du Quine testified, of whose testimony and its effect enough has already been said.

Instructions number nine and fourteen were confessedly correct.

Number fifteen is that given in opposition to the eighth instruction asked by the relator, of which we have previously spoken.

Instruction number sixteen was correct. Proof by persons who themselves resided in any town or village, that no such persons as some whose names were on the poll-list of such town or village as having voted at the election, were known by the witnesses to have resided in the town or village, is sufficient to authorize the jury, if they believe from the evidence such to have been the fact, to find that such names are either the names of fictitious persons, or of persons who were not voters in such town or village, unless some other proof to the contrary is given.

Instruction number seventeen was also correct. This follows from what has already been said. The facts stated in this instruction being found by the jury, the burden of proof was changed, and it was the duty of the jury to reject the votes, unless the relator should, by some competent evidence, show that the persons casting them were qualified electors.

Instruction number eighteen, the last given for the respond-

State ex rel. Hopkins vs. Olin.

ent, and the only one which remains for our consideration, was in these words : "If any person who voted for Princeton at said election was induced so to vote by the payment or promise of any money or other valuable consideration for such vote, his vote should be rejected as illegal; and this, although he may have been employed at the same time to peddle tickets, or render other services, for which he was also to receive a compensation." In our form of government, where the administration of public affairs is regulated by the will of the people, or a majority of them, expressed through the ballot-box, the free exercise of the elective franchise by the qualified voters is a matter of the highest importance. The safety and perpetuity of our institutions depend upon this. It is, therefore, particularly important that every voter should be free from any pecuniary influence. For this reason the attempt by bribery to influence an elector in giving his vote or ballot is made an indictable offense by statute. R. S. ch. 169, § 37. The payment or promise of money or other valuable consideration for the giving of a vote, no doubt constitutes the offense of bribery, or attempt to bribe, within the meaning of the statute. Can a vote thus obtained, in direct violation of the statute, be considered a valid or legal vote? If it can, then the very object of the statute, which is that it shall not be so obtained, is defeated. We are of opinion that such votes are illegal, and that the judge was right in directing the jury to disregard them. This conclusion is sustained by the authorities, so far as we have been able to find any. In 27 N. Y. p. 59, reference is made to a note in 3 McCord, 230, where it is said that the declarations of a voter may be given in evidence to prove bribery; they are admitted to *annul* the votes, but not to set aside the election by *disqualifying* the member on account of *his* bribery; and several cases in Douglass' Election Cases are cited.

*By the Court.*—Judgment affirmed.

PAINE, J., having been of counsel, did not sit in the case.