State ex rel. Hallam v. Lally, 134 Wis. 253.

*By the Court.*—It is so ordered.

STATE EX REL. HALLAM, Respondent, vs. LALLY, Appellant.

*December 16, 1907—January 8, 1908.*

*Continuance: Sufficiency of motion papers: Discretion: Elections: Evidence: Declarations of voters: Admissibility: Qualification of voters: Residence.*

1. A motion for a continuance to secure an absent witness, made after the close of the evidence taken on the trial, is *held* to have been properly denied because the affidavit in support thereof did not inform the court as to what efforts had been made to obtain the attendance of the witness, or what efforts had been

made to prepare for trial in respect to the point in relation to which his testimony was desired.

[2. Whether the testimony of a witness as to what a voter said as to his residence, standing alone, is sufficient to overcome the presumption that he was a legal voter, arising from the fact that he voted at the election, not decided.]

3. While the declarations of a voter who has voted at an election, as to how he voted, are admissible, there is no absolute right to their reception. The trial court may receive or reject them according to circumstances.

4. A person who has voted at an election is a party to any controversy thereafter arising as to the result.

5. In an action to try title to the office of alderman, the evidence, stated in the opinion, is *held* to establish that voters whose votes were rejected by the court came into the election district a short time before the election solely for temporary purposes and that they continued to be mere temporary sojourners therein up to and inclusive of election day, and hence were not qualified voters within the calls of secs. 12, 69, Stats. (1898).

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Affirmed.*

*Quo warranto* action involving the right to the office of alderman of the Tenth ward of the city of Superior. The relator by the official canvass was defeated by a small majority of the votes cast, given to the defendant. The former duly qualified and entered upon the duties of the office. The cause was tried by the court, resulting in a decision that the relator was elected by one majority of the legal votes cast. The decision turned on the question of whether the vote of Frank Allman and that of Paul Peck, given as was found for the defendant, were legal. At the close of the evidence a motion was made on behalf of the defendant, supported by his affidavit, for an adjournment of the court for one week to enable him to obtain the attendance of one Norton as a witness, it being claimed that he would testify that Allman resided for several years in the state of Wisconsin and for more than thirty days in the Tenth ward of the city of Superior before April 1, 1906. The affidavit stated that

appellant had used due diligence to secure Norton's attendance at the trial, but that he did not know his whereabouts until after the trial began and that he knew of no other witness by whom he could prove the facts he could prove by Norton. It did not inform the court of the nature and kind of diligence used to obtain the attendance of the witness, nor what efforts had been made to obtain evidence in respect to the matter it was supposed Norton would testify to. As the case stood the proof as to Allman's residence and for whom he voted rested largely on the testimony of one Ely, and particularly on his evidence of what Allman said to him respecting the person for whom he voted. The motion for a continuance was denied upon the ground that it did not appear appellant had made any preparation for the trial, or that if the testimony of Norton of the character indicated in the affidavit were before the court it would change the result. Judgment of ouster was rendered as prayed for.

The cause was submitted for the appellant on the brief of *George C. Cooper.*

For the respondent there was a brief by *E. F. McCausland* and *Chas. H. Crownhart,* and oral argument by *Mr. Crownhart.*

MARSHALL, J. The motion for a continuance was addressed to the sound discretion of the court. There are no satisfactory indications that such discretion was abused. The motion was properly denied because the affidavit did not inform the court as to what efforts had been made to obtain the attendance of Norton or what efforts had been made to prepare for trial in respect to the point in relation to which his testimony was desired. On the contrary, as the court held, it appeared that appellant had not made any preparation whatever to meet the case which the complaint advised him would be presented.

It is contended that the trial court erred in finding that

Allman was not a legal voter because it was grounded wholly, or in the main, on the testimony of Ely as to what Allman told him, and that such testimony though proper under the decisions of this court (*State ex rel. Hopkins v. Olin,* 23 Wis. 309; *State ex rel. Bell v. Conness,* 106 Wis. 425, 82 N. W. 288; *State ex rel. Leonard v. Rosenthal,* 123 Wis. 442, 102 N. W. 49), standing alone was not sufficient to overcome the presumption that he was a legal voter, arising from the fact that he voted at the election.

We are not prepared to say, as a matter of law, that testimony of the character referred to would not, even standing alone, be sufficient to overcome such presumption. True, it is a kind which in many, and perhaps most, jurisdictions is rejected, and as said in *State ex rel. Bell v. Conness, supra,* there is no absolute right to its reception. The court may receive or reject it according to circumstances, and "care must always be taken in its reception lest some irresponsible voter, making admissions after a contest has arisen, be permitted to overturn an election by procurement or express design." As to the weight of the evidence, "much depends upon the circumstances of the case, as well as the circumstances of the admission." The court in this case evidently decided that the situation warranted reception of the evidence and that the voter's admission was characterized by such circumstances with others in the case as to render the proof as a whole sufficient to show that he voted for appellant. There were some circumstances indicating a pretty strong probability as to how he voted. It is unnecessary to refer to them in detail.

We should remark in passing that it is fully recognized that there is much authority contrary to the position of this court in respect to the admission of evidence in a case of this sort of declarations made by a voter after the election respecting how he voted, and holding that it is the merest hearsay, but it has not seemed best to change the rule which was

laid down here nearly forty years ago, and which stood unchallenged for more than thirty years thereafter. Probably the only logical basis for it is the one stated in the early decision, viz.: A person who •has voted at an election is a party to any controversy thereafter arising as to the result. The rule was phrased thus in *State ex rel. Hopkins v. Olin, supra:*

"A person who has voted at an election is always considered as a party when the result of the election is in controversy, and on that ground his declarations, voluntarily made, are admissible. It is considered to be a question between the voter and the party questioning his vote, and not merely between the party holding the office and him who claims it."

It is said that the rule originated in England and has been adopted in this state and in New York (*People ex rel. Smith v. Pease,* 27 N. Y. 45), and in a modified form in several other states, while in others it has been wholly rejected. McCrary, Elections (4th ed.) § 484.

The only other complaint claiming our attention is that the finding that Peck was not a legal voter is contrary to the evidence. That is predicated on his own testimony, to the effect that he had been in the state of Wisconsin since 1881, and had since February 5th before the election lived in the ward where he voted; that he came there to stay temporarily and only while engaged on a particular job of work which he supposed, at the time of his coming, would last but a few months, and that he intended to go elsewhere, or at least out of the ward, as soon as the job should be completed; that he had no intention of making a home in such ward or to stay there except while he was engaged upon the work mentioned.

It is insisted that the evidence referred to clearly shows that Peck was a legal voter, reliance being placed on authority referred to in a sister state, to the effect that a resi-

dent of a state having no fixed place of abode may vote wherever he may be on election day. Such authority is based wholly on the statute of the state where the case arose. It has no application here, since our statute plainly provides that to entitle a person to vote at an election he must have been an actual resident in the state for one year next preceding such election and for ten days in the election district where he offers to vote—sec. 12, Stats. (1898),—and that the term "residence" means a fixed habitation without any present intention of removing therefrom, and to which when the person is absent he has the intention of returning, and that one shall not be deemed to have gained a residence within the meaning of the law by merely coming into an election precinct for temporary purposes only—subd. 2, 4, sec. 69, Stats. (1898).

So, instead of the testimony of Peck showing he was a qualified voter of the Tenth ward of the city of Superior at the election in question, it clearly shows the contrary. As counsel for respondent contend, the evidence quite clearly indicates that both Allman and Peck came into the ward in question a short time before the election solely for temporary purposes and continued to be mere temporary sojourners therein up to and inclusive of election day, and so manifestly were not qualified voters.

*By the Court.*—Judgment affirmed.