STATE OF IOWA ex rel. W. M. BEU et al., Appellants, v E. H. LOCKWOOD et al., Appellees.

**SCHOOLS AND SCHOOL DISTRICTS:** Consolidation—Election—
1   **Failure to Provide Separate Ballot Boxes.** Failure of election officials to provide separate ballot boxes for electors residing

within and without villages, etc., does not invalidate an election in favor of consolidation when it is made to appear that a majority of the 'electors both *outside* and *inside* villages, etc., voted in favor of the consolidation.   (Sec. 2794-a, Code Supp., 1913.)

ELECTIONS:   Conduct of Elections—Irregularities.   Principle recognized that irregularities and omissions of clear statutory requirements *by election officials* do not necessarily invalidate an election.

SCHOOLS AND SCHOOL DISTRICTS:   Consolidation—Election— How Elector Voted—Oral Testimony.   The voluntary oral testimony of electors as to *how* they voted at an election to form a consolidated school district is competent on the question whether a majority of the electors, both *inside* and *outside* a village, voted in favor of consolidation, *and no other means exists to decide said question.*   So held where there was an omission to provide separate ballot boxes.   (Sec. 2794-a, Code Supp., 1913.)

ELECTIONS:   Contests—Oral Testimony as to How Elector Voted. Principle recognized that, under some circumstances, an elector may voluntarily testify *how* he voted

*Appeal from Bremer District Court.*—J. J. CLARK, Judge.

DECEMBER 11, 1917.

ACTION to test the legality of the attempted consolidation of certain territory in Bremer and Fayette Counties into a consolidated school district.   There was a trial to the court upon an agreed statement of facts.   Plaintiff's petition was dismissed, and it appeals.—*Affirmed.*

*Sager & Sweet,* for appellants.

*C. B. Hughes, W. J. Ainsworth,* and *W. H. Antes,* for appellees.

1. SCHOOLS AND SCHOOL DISTRICTS: consolidation: election: failure to provide separate ballot boxes.

PRESTON, J.—Upon the refusal of the county attorneys to bring suit, a judge of the district court gave relators leave to commence action.   Plaintiffs thereupon filed their petition, and alleged, in substance, that they are property owners and taxpayers

within the limits of the territory of the proposed school district; that defendants are exercising authority illegally, as the pretended officers and directors of the pretended school district; that there is in fact no such school district, because no valid election was ever held authorizing the same; that the platted village of Oran is within the pretended district; that, at a pretended election held about February 23, 1915, for the organization of said pretended school district, no separate ballot boxes were provided in which the voters within and without the village of Oran deposited their ballots, but that all ballots were cast in one box; that voters residing in the village and outside thereof voted at said election. Relators ask that defendants be required to show by what authority they claim to hold and exercise the rights, powers and authority of officers and directors of said district; that defendants be ousted and altogether excluded from such offices, etc.

The allegations are denied, except that some are admitted. Further answering, defendants say that, at the date of said election, there resided within the village aforesaid 18 voters who cast their ballots, and that, without the platted limits of said village, there resided 76 voters who cast their ballots; that, of the 94 ballots so cast, 62 were in favor of consolidation, 31 were opposed, and 1 ballot was spoiled; that every ballot cast by the voters within the platted village of Oran was in favor of consolidation; and that, of the voters outside, 44 were cast in favor of consolidation and 31 in opposition; that a clear majority of the votes both within and without said village were cast in favor of the organization and consolidation of the aforesaid district. It was stipulated in writing as follows:

"1. The plaintiffs are citizens of the state and taxpayers owning land within the limits of the territory embraced in the proposed consolidated school district referred to in the pleadings.

"2. That plaintiffs are acting not only in their own behalf but in behalf of numerous other taxpayers living within the territory embraced by the proposed district.

"3. That the defendants John Clark, Jesse Clark and Henry Etgeton are citizens and residents of Bremer County, and the defendants E. H. Lockwood, August Bahe and L. A. Rohde are residents of Fayette County.

"4. That all of said defendants reside in and about the village of Oran in Fayette County, and claim to exercise authority, and claim the right to act as officers and directors of the 'Bremer-Fayette Consolidated Independent School District of Bremer and Fayette Counties,' under and by virtue of the election hereinafter referred to. That the defendants are acting and claim the right to act under such election as officers, directors and secretary of said district.

"5. That within the territory included within the consolidated district which was sought to be established by the election is located the village of Oran, which is and for years has been a regularly laid out and platted village.

"6. That the proposed consolidated school district included not only the village of Oran, but included territory outside of the platted limits of said village of Oran.

"7. That on February 23, 1915, there was held an election for the purpose of determining the question whether the consolidated district herein named should be formed, and that at the election so held votes were cast by residents of the village of Oran and residents of the platted portion thereof, and also by voters residing upon the territory outside of the platted limits of said village of Oran.

"8. That at said election but one ballot box was provided for the reception of all the ballots cast at said election, there being no separate ballot boxes provided in which to deposit the votes cast by the voters for their respective territory.

"9. That at said election a number of voters residing

in the village of Oran voted 'at said election, and at the same election a number of voters residing outside of said village voted thereat—all ballots being deposited in the one ballot box.  *  *  *

"11.  It is further stipulated that, if the voters who voted at said election were called, and allowed to testify over the objection herein set out, they would testify to the facts hereinafter set forth; and the court may regard such facts as offered by the lips of said voters, subject to the following objection, which shall be considered and ruled upon as if the voters were called and sworn and offered to testify to said matters in open court, to wit:

" 'Plaintiffs object to the testimony proposed to be offered on the ground that the same is incompetent, irrelevant and immaterial; that the voters are not competent to testify how they voted at said election; that the evidence proposed to be offered is secondary and not the best evidence, and that the only competent evidence on the question of how many votes were cast and whether cast in the affirmative or negative of the question voted upon are the ballots themselves, as deposited in the ballot box provided for said election; that the individual voters cannot testify as to how they voted at said election, neither can the court go behind the ballots and election returns.'

"If the court overrules said objection, it shall consider the case as if the witnesses had testified to the matters hereafter set out; but if it sustains the objection, such matters shall not be considered, to wit:

"The village of Oran is situated within said district, is platted, and within the platted limits of said village there resided, on the date of the aforesaid election, to wit, February 23, 1915, eighteen (18) voters who cast their ballots in said election.  That without the platted limits of said village of Oran on said date, there resided seventy-six (76) voters who cast their ballots in said election.

That of the ninety-four (94) votes cast by the voters of the district aforesaid, sixty-two (62) were in favor of consolidation, thirty-one (31) were opposed to consolidation, and one (1) ballot was spoiled.

"That each and every ballot cast by the voters residing within the platted limits of the village of Oran were in favor of consolidation.

"That of the ballots cast by the voters of said district residing without the platted limits of the village of Oran, forty-four (44) ballots were cast in favor of consolidation and thirty-one (31) ballots were cast in opposition to consolidation.

"Exceptions shall be reserved to the ruling of the court on the objection above set out."

Two questions are involved: Does the absence of the two ballot boxes invalidate the election? Second, if it does not, may the voters be allowed to testify as to how they voted, and show that a majority in each of the territories affected by the proposed consolidation voted in the affirmative? The trial court held that the election was not invalidated by the fact that but one ballot box was used, and ruled that the evidence of the voters was competent.

The voters were not compelled to testify, but gave their testimony voluntarily. No fraud is charged, and the fairness and honesty of the election are not challenged.

1. Section 2794-a, Code Supplement, 1913, provides that, if a majority of the votes cast by the electors residing either within or without the limits of the city, town or village, as the case may be, is against the proposition to form a consolidated independent corporation, then the proposed corporation shall not be formed, and that the voters within and without such limits shall vote separately, and further:

"The judges of said election shall provide separate ballot boxes, in which shall be deposited the votes cast by the voters from their respective territory," etc.

Appellant contends that the statute is mandatory, and that because, in the instant case, two ballot boxes were not used, the election is invalid; while appellees contend that the provision is directory. Doubtless the purpose of having two ballot boxes is to determine whether there is a majority for or against the consolidation in the territory within and without the limits of the village.

Both appellant and appellees cite *State ex rel. Thompson v. Booth,* 169 Iowa 143, each claiming that the decision there determines the point now under consideration in this case. But we think that the point now under consideration was not directly determined therein. That case was decided on demurrer which admitted the allegations of the petition, so that it appeared affirmatively that all the votes within the village were cast in favor of the consolidation, and that a clear and large majority of the votes cast from outside of the village was in favor of such consolidation, and that, under such a showing, the election was not rendered void by the mere failure of the judges to furnish two ballot boxes. It is thought that it must necessarily be inferred from the holding in that case that the court did consider the statute directory. It is contended by appellant that there is a presumption that the use of the word "shall" in the statute is in an imperative, and not a directory, sense. To support their contention they cite 25 Am. & Eng. Encyc. of Law 633, *Ex parte Jordan,* 94 U. S. 248, 251 (24 L. Ed. 123), 5 Encyc. of Evidence 45, 46, 15 Cyc. 317, 35 Cyc. 1451, and *De Long v. Brown,* 113 Iowa 370, to the proposition that there must be a substantial compliance with the election statute. This is doubtless true, so far as the judges of the election are concerned, —it is the judges who are required to provide separate ballot boxes. The failure of the election officers to do so was no fault of the voters. There are numerous instances where a failure of election officers to comply with the stat-

2. ELECTIONS: conduct of elections: irregularities.

ute, though the statute may be mandatory as to them, may not deprive the voters who are not at fault of their right to vote. We think that the duty of the election officers to furnish two ballot boxes was a ministerial duty, and that their failure to perform such duty does not invalidate the election. Many authorities are cited to sustain this propo-. sition, and we shall not attempt a review of the cases or the reasoning. The rule is stated in 15 Cyc. 316, 352, 372, 373. See also *Younker v. Susong*, 173 Iowa 663; *Hope v. Flentge*, (Mo.) 47 L. R. A. 806, 821; *Gilleland v. Schuyler*, 9 Kans. 569; *Perry v. Hackney*, (N. D.) 90 N. W. 483; *District Twp. of Lincoln v. Independent Dist. of Germania*, 112 Iowa 321; *State v. Alexander*, 129 Iowa 538; *Chapman v. State*, (Tex.) 39 S. W. 113; *Allen v. Glynn*, (Colo.) 15 L. R. A. 743; *Independent School Dist. v. Independent School Dist.*, 153 Iowa 598; *State v. Shanks*, (S. D.) 125 N. W. 122; *Cook v. Fisher*, 100 Iowa 27; *State v. Russell*, (Neb.) 15 L. R. A. 740; 5 Encyc. of Evidence, 69.

Some of the cases state the rule that such proceedings are mandatory if sought by direct proceedings before election, but thereafter all should be held directory, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote or the ascertainment of the result, or unless the provisions affect an essential element of the election, or it is expressly declared by statute that the particular act is essential to the validity of the election, or that its omission will render it void. In *State v. Shanks*, (S. D.) 125 N. W. 122, 123, it was said that an election will not be defeated by a failure to comply with the statute, provided the irregularity has not hindered anyone who is entitled to the right of suffrage from exercising it, or rendered doubtful the evidence from which the result was to be declared.

It is conceded that, because the ballots of voters residing within and without the village were all deposited

in one box, and the ballots would not show whether the voter resided within or without the village, it would be impossible to determine from the returns, or from the ballots themselves, whether the majority of the voters within and without the village were for or against consolidation. This being so, it is thought that, under such circumstances, the election should be held invalid because it obstructs the ascertainment of the result. This might be so; but, as said, the voters were not to blame, and if there is any legal way to determine the result, we should seek it, since the election in question was free and fair, and no one deprived of a right of expression on the question; otherwise the voters would be disfranchised, and the will of the people defeated.

2. This brings us to the question whether the voters may voluntarily testify how they voted.

**3. Schools and school districts: consolidation: election: how elector voted: oral testimony.**

It appears that there were 93 valid ballots cast by the electors of the whole district; 62 of these were in favor of consolidation and 31 opposed; 18 of these were cast by the voters residing within the platted limits of the village of Oran; and if it is a fact that a majority of the 18 electors of the village voted in favor of consolidation, then there can be no question of the clear majority's voting for consolidation outside the platted limits of said village. If the evidence of the voters as to how they voted is competent, then, under the stipulated facts, the 18 in the town all voted for consolidation, and 44 of those residing outside were so in favor.

It is contended by appellant that even the ballots themselves are not receivable, except on proof that the ballots have been properly preserved, citing *Davenport v. Olerich*, 104 Iowa 194; and that to allow

**4. Elections: contests: oral testimony as to how elector voted.**

the electors to testify as to how they voted would enable them to change their votes and thus change the result, after it was known how many votes were needed to accomplish that purpose, and that, therefore, such evidence is not receivable; and they cite on this *People v. Tisdale,* 1 Doug. (Mich.) 59, *Pennington v. Hare,* 60 Minn. 146 (62 N. W. 116). They further contend that the ballots are the best and only evidence as to how the electors voted, citing *Tebbe v. Smith,* 108 Calif. 101 (29 L. R. A. 673, 49 Am. St. Rep. 68); *Mallett v. Plumb,* 60 Conn. 352; *Newhouse v. Alexander,* 30 L. R. A. (N. S.) 603; *O'Gorman v. Richter,* 31 Minn. 25 (16 N. W. 416). And they say, too, that to allow the voters to testify as to how they voted would amount to another election in court by calling a sufficient number of voters and allowing them to testify that a majority of the voters in each of the territories affected voted in the affirmative. But it occurs to us that it is not a question how the voters would vote when called to testify, but how they did vote in the election. In other words, it is simply seeking to ascertain the facts. That there might be inducement for voters to testify falsely is not of itself sufficient to exclude all the evidence. Such is the situation in many cases. It must be conceded that ordinarily the ballots are the best evidence as to how the electors voted; but in this case the ballots themselves would show only that 75 voters voted for the consolidation, but would not show how many of these resided within and without the village. The returns did not show that fact. As said, there is no way, under the circumstances of this case, to show that fact except by the testimony of the voters themselves; and if it may not be done in this way, all those voting at this election would be disfranchised. Under the facts of this case, the ballots might as well have been destroyed. There is nothing in the law requiring or authorizing any identification of the ballots themselves to show whether they were cast within or outside the village.

Among the cases cited by appellees are *Dishon v. Smith,* 10 Iowa 212; *Wimmer v. Eaton,* 72 Iowa 374. In the *Dishon* case, the defect was that it was not shown that the judges and clerks of election were sworn, and it was urged that this defect vitiated the returns. But it was held that this was not so, and the court said, at page 219:

"Whilst it is the law that the canvassers cannot adjudicate upon the sufficiency of returns, as we have held in the former case, where a case of this kind comes into a court of justice, such court, or a jury trying it, not only may, but it is their duty to, look behind the returns, and even behind the ballot box in some cases."

In the *Wimmer* case, electors were examined as witnesses, and, over objection, permitted to testify that ballots cast by them bore the name of F. Wimmer, and that they supposed that that was plaintiff's name, E. Wimmer, and that it was their intention to vote for him. To the same point see *People v. Wintermute,* (N. Y.) 86 N. E. 818.

In 5 Encyc. of Evidence, 69, 70, it is said:

"In cases in which, from any cause, the returns, ballots and other records of the election proceeding are incompetent or unavailable as evidence of the true result in any precinct or district, evidence *aliunde* is admissible to prove the same."

Cases from a number of states are there cited. Other cases use this language:

"Whenever by any means the prima-facie presumption of the correctness of the returns is overthrown, the true vote may be proved, and it is never thrown out if, by any process, it can be discovered."

15 Cyc. 424 states that, according to the weight of authority, the exemption from obligation to disclose the character of his vote can be claimed only by the voter himself, but that the question may properly be put to the witness,

and if he sees fit to answer it, there can be no objection to the testimony (citing cases); though it is said at the same citation that there are cases holding that the voter may not testify as to how he voted. McCrary on Elections (4th Ed.), Sec. 492, holds the evidence competent. See also *Strebin v. Lavengood,* (Ind.). 71 N. E. 494, 498; *People v. Wintermute,* supra; *Buckingham v. Angell,* (Ill.) 87 N. E. 285; *Williams v. Stein,* 38 Ind. 89; 5 Jones on Evidence, Sec. 892, Note 64, and cases. Some of the cases go so far as to hold that declarations of a voter voluntarily made are admissible on the theory, as some of the cases put it, that he is considered a party, when the result of the election is in controversy. *People v. Pease,* 27 N. Y. 45; *State v. Lally,* 134 Wis. 253 (114 N. W. 447); 9 R. C. L. 1150. It is thought that the holding in *State ex rel. Thompson v. Booth,* supra, necessarily involves the holding that the evidence is admissible, because there, as here, but one ballot box was used. True, that case was decided on demurrer, wherein the petition alleged the number of votes that were cast in each part of the territory, so that there would be the same difficulty in identifying the ballots as here. If the evidence of the voters is admissible, then the result of this election is not doubtful, because the evidence is undisputed. It is our conclusion that the evidence is competent.

The judgment of the district court is, therefore,—*Affirmed.*

GAYNOR, C. J., WEAVER and STEVENS, JJ., concur.