ROBERT C. ZIMMERMAN, Secretary of State
JAMES R. ERICKSON, District Attorney
Both of your offices have requested my opinion on several questions concerning the residence of military personnel, and their families, under the election laws of the state of Wisconsin. Since both requests ask essentially the same questions, I will treat them as one inquiry for the purpose of this opinion.
You direct my attention to the provisions of sec. 6.10, Stats., which sets forth the standards which may be applied to assist in establishing residence as a qualification for voting. Your questions refer most specifically to the second clause of sec.6.10 (6), Stats., which reads as follows:
"(6) As prescribed in the constitution, no person loses his residence in this state while absent from this state on business for the United States or this state; and no member of the armedforces of the United States gains a residence in this statebecause he is stationed within this state." (Emphasis added.) *Page 270 
You inquire as to whether this section of the statutes precludes a member of the Armed Forces stationed in Wisconsin, or other adult members of his family living with him, from electing to become Wisconsin residents.
In 35 OAG 3 (1946), when interpreting the above-quoted language of sec. 6.10 (6), Stats., then numbered sec. 6.51 (1), Stats., my predecessor advised that servicemen stationed in Wisconsin may acquire Wisconsin residency. I am in accord with that view. The facts under consideration in that opinion indicated that a soldier, who was formerly a resident of another state, had, while stationed in Wisconsin, and prior to his marriage to a Wisconsin resident, furnished evidence of an intention to permanently locate in Wisconsin and had, in fact, after the marriage, resided with his wife in Wisconsin. Under these and the other facts and circumstances present, it was concluded that his subsequent removal to camps outside Wisconsin for short periods of time prior to overseas service did not result in the loss of his Wisconsin residence. The following is stated at page 5 of the opinion:
"Subsection (1) ordinarily results in no residence being acquired by military personnel stationed in Wisconsin. However, this does not mean that such persons cannot acquire residence here if they have the intention of remaining in the state and set up homes for their families in this state. The constitutional provision referred to in sec. 6.51 (1) is Art. III, sec. 5 of the Wisconsin constitution which provides that no soldier, seaman or marine in the army or navy of the United States shall be deemed a resident of this state in consequence of being stationed within the same.
"There are no Wisconsin cases involving this particular constitutional provision, but there appears to be no valid reason why the soldier husband could not acquire his wife's residence in Wisconsin if he so desired. * * *"
This opinion reflects the conclusion reached in an earlier opinion of the office reported in 10 OAG 749 (1921), which considered whether Art. III, sec. 5, Wis. Const., prohibited a sailor from changing his residence after being inducted into the navy. In that opinion, at p. 751, the following is stated: *Page 271 
"* * * It will be noted that there is no provision expressly prohibiting a soldier or sailor from establishing a residence in any part of the United States that he may select. That section was put into the constitution for the purpose of settling the question of whether or not a soldier or sailor who merely was in Wisconsin on duty, and with no intention of remaining here and making this state his home, would have a right to vote. This section in no sense of the word denies the right of citizenship to a soldier or sailor in case he, in good faith, desires to establish his residence here. This provision of the constitution merely requires that he should bring forward some proof other than a mere presence in the state on duty before he can vote here."
Subsequent to these opinions, the United States Supreme Court in Carrington v. Rash (1965), 380 U.S. 89, 85 S.Ct. 775,13 L.ed. 2d 675, considered a Texas constitutional provision which prohibited military personnel, who moved to Texas while on duty, from voting in any election in that state while a member of the Armed Forces. In holding this provision to be in violation of the Equal Protection Clause of the Fourteenth Amendment, the court stated at 380 U.S. 93-94:
"We stress — and this is a theme to be reiterated — that Texas has the right to require that all military personnel enrolled to vote be bona fide residents of the community. But if they are in fact residents, with the intention of making Texas their home indefinitely, they, as all other qualified residents, have a right to an equal opportunity for political representation."
More recently, in Dunn v. Blumstein (1972), 405 U.S. 330,92 S.Ct. 995, 31 L.ed. 2d 274, the court pointed to the Carrington
decision as support for its conclusion that the state of Tennessee could not validly require that persons be residents in the state for a year, and in the county for three months before they could vote. The court states the following, at92 S.Ct., p. 1007:
"* * * the State argued that it was difficult to tell whether persons moving to Texas while in the military service were in fact bona fide residents. Thus, the State said, the administrative convenience of avoiding difficult factual determinations justified a blanket exclusion of all servicemen stationed in Texas. . . . While many servicemen in Texas were not bona fide residents, and *Page 272 
therefore properly ineligible to vote, many servicemen clearly were bona fide residents. Since `more precise tests' were available `to winnow successfully from the ranks . . . those whose residence in the State is bona fide,' conclusive presumptions were impermissible in light of the individual interests affected. * * *"
However, the court emphasized the state's legitimate purpose in determining whether certain persons, newly arrived in the community, were bona fide residents, stating, at92 S.Ct., p. 1007-1008:
"* * * In general, it is not very difficult for Tennessee to determine on an individualized basis whether one recently arrived in the community is in fact a resident, although of course there will always be difficult cases. Tennessee has defined a test for bona fide residence, and appears prepared to apply it on an individualized basis in various legal contexts. That test could easily be applied to new arrivals. Furthermore, if it is unlikely that would-be fraudulent voters would remain in a false locale for the lengthy period imposed by durational residence requirements, it is just as unlikely that they would collect such objective indicia of bona fide residence as a dwelling, car registration, or driver's license. * * *"
It is evident from the foregoing that a person in military service may choose Wisconsin as his residence just as freely as any other person.
From what has been said in reference to the previous question, it should also be evident that the military status of a woman's husband places no greater burden on her right to choose a residence than it does in reference to her husband. AS has so often been stated by our office in the past, the residence of a person for voting purposes is determined by the combination of two important elements: intent to establish a residence at a particular place for an indefinite or permanent period of time, to the exclusion of any other or former home or residence, and physical presence at the place so established, except for temporary absences with the intent to return. State ex rel.Hallam v. Lally (1908), 134 Wis. 253, 258, 114 N.W. 447. These general concepts, *Page 273 
and others, have been incorporated in sec. 6.10, Stats. The following subsections of that statute appear most pertinent to this specific inquiry:
"(1) The residence of a person is the place where his habitation is fixed, without any present intent to move, and to which, when absent, he intends to return.
"(2) When a married man's family resides at one place and his business is conducted at another place, the former establishes the residence. If the family place is temporary or for transient purposes, it is not the residence.
"* * *
"(11) Neither an intent to acquire a new residence without removal, nor a removal without intent, shall affect residence."
These provisions, in one form or another, have been part of the statutes for many years, and are simply declaratory of the common law. Miller v. Sovereign Camp W.O.W. (1909), 140 Wis. 505, 509,122 N.W. 1126; In re Burke (1938), 229 Wis. 545, 561,280 N.W. 598.
Generally speaking, although the place where the family resides normally establishes the residence of the individual members of the family unit, this is not true if the present family home is "temporary or for transient purposes." In addition, the residence of a man's wife is normally considered to be that of her husband, on the theory that she intends to live with her husband not temporarily but permanently. 17 OAG 489 (1928). Therefore, if the member of the Armed Forces is only temporarily stationed in Wisconsin, and there is no evidence that the members of the family intend to abandon a prior residence status and establish Wisconsin residence, neither the husband nor the wife may vote in Wisconsin elections. However, the fact that a family of a person in military service is required to move from one temporary location to another at frequent intervals is not inconsistent with an intention to establish and retain a permanent place of residence in Wisconsin to which, when absent, he intends to return. *Page 274 
On previous occasions, I have pointed out that, as a practical matter, there is no absolute criterion or guideline which will, at once, determine the question of residence in each and every case, since each individual case depends on its own particular facts. For instance, the provisions of sec. 6.10 (2), Stats., notwithstanding, the Wisconsin Supreme Court has held that where the facts are consistent with such a conclusion, a married man's residence may be held to be at a place other than the place where his family permanently resides. State ex rel. Linarys v. Dorwin
(1964), 22 Wis.2d 474, 126 N.W.2d 49. Likewise, sec. 246.15, Stats., originally adopted as sec. 6.015, by ch. 529, Laws of 1921, has modified the rights of husband and wife as they existed at the common law, and restored the married women to certain rights and privileges previously considered to have been lost upon marriage. Wait v. Pierce (1926), 191 Wis. 202, 209 N.W. 475,210 N.W. 822. Section 246.15, Stats., specifically provides in part that:
"Women shall have the same rights and privileges under the law as men in the exercise of suffrage . . . [and] choice of residence for voting purposes, . . ."
Our court has pointed to this statute as one of the grounds for the conclusion that where the necessary combination of intent and physical presence exists, a married woman may maintain a legal residence separate from her husband. Lucas v. Lucas (1947),251 Wis. 129, 28 N.W.2d 337. Although the court in that case was concerned with residence for the purpose of divorce, its remarks, at p. 132 of the opinion, appear equally applicable here:
"* * * We have a situation, then, where, if it be that the appellant [husband] had established a domicile in Clinton, Iowa, each party was maintaining a separate domicile. Appellant's contention is that respondent as the wife did not have a right to regard her residence in Kenosha as her domicile for divorce purposes against the general rule that the domicile of the wife follows that of the husband. It is considered that she had such a right. There are a number of grounds for this conclusion. * * *"
Under the provisions of sec. 246.15, Stats., therefore, a woman does not lose her ability to establish a residence under the Wisconsin election laws simply because of her married status. *Page 275 
However, because of the nature of marriage itself, the residence of the husband and wife is normally one and the same, and the residence of the wife will be considered as following that of her husband until she actually establishes a residence separate from her husband.
Finally, you inquire as to the ability of a serviceman's unmarried children of voting age to establish a residence separate from that of their parents. You will note that a formal opinion just forwarded to your office dated May 24, 1972, fully discusses the general law applicable to the establishment of residence by "young adults" under the election laws of the state of Wisconsin. That opinion, when read in conjunction with this opinion, should dispose of most questions concerning the residence of such "unmarried children of voting age."
RWW:JCM